## CARR *v.* THE STATE.

1. The defense of insanity at the time of the perpetration of the alleged crime is included in and made by the plea of the general issue; and while, in the absence of a special plea setting up insanity at the time of the trial, it may not have been necessary for the court to explain to the jury the nature and purpose of such a plea, that this was done is not cause for a new trial, it appearing that the court, in this connection, also instructed the jury to the effect that the mental condition of the accused since the commission of the alleged criminal act and at the time of the trial might be considered as throwing light upon the condition of his mind at the time that act was done.

2. The defense being general insanity, and there being no evidence of special *dementia*, or that the accused was laboring under any delusion as to the act committed, there was no error in charging: "Insanity is where there is a total or partial impairment of the intellect, and to such an extent that the person who is thus affected does not know the difference between right and wrong as to the act that he is committing."

3. That the court undertook in a general way to explain to the jury the different forms and kinds of insanity, was not of itself an invasion of their province in passing upon the questions of fact involved in the case; and though the court's definitions may not have been sufficiently comprehensive nor in all respects perfectly correct, they were not, in view of the entire charge, harmful to the accused.

4. While it may not have been appropriate for the court to inform the jury, as matter of fact, that insanity in all its forms was liable to become worse; that insanity of any kind was progressive in its nature; and that, while there were some exceptions, the general rule was that it progressed till it ended in complete *dementia*, so doing was neither expressing an 'opinion as to the facts of the pending case, nor, in view of all the evidence and of the respective contentions of the parties, cause for a new trial.

5. The legal presumption being that every person is sane, and that every such person remains so until the contrary is shown, it is essential to the establishment of the distinctive defense of insanity as such, that insanity at the time of the commission of the offense be proved by a preponderance of the evidence; and the burden of so doing rests upon the accused. If this particular defense is not thus established, the jury would not be authorized to acquit upon the same. The evidence bearing on the question of insanity should, however, be duly considered in connection with all the other evidence, in determining whether or not, upon a view of the whole case, there was a reasonable doubt of the guilt of the accused. The mere failure of the court in the present case to charge as indicated in the preceding sentence, there being no request so to do, is not cause for a new trial, the charge upon the subject of reasonable doubt being sufficiently full and fair to give the accused the benefit of all the evibence rlating to his alleged insanity for the purpose of casting a doubt upon his guilt.

6. The charges complained of and which are not covered by the rulings announced in the preceding notes, if erroneous at all, contain nothing which would justify the granting of a new trial; there was no error in striking the special plea filed by the accused, nor in refusing to allow his counsel, because of such plea, to open and conclude the evidence and the argument; the newly discovered evidence was cumulative, and would not probably change the result; the alleged irregularities and improprieties in the conduct of court

and counsel were not shown to have occurred ; the alleged mis-
conduct of the jury in reading newspaper reports of the trial was
sufficiently disproved by the affidavits of the jurors themselves,
and the affidavits to the contrary, made by two of them, could not
be received to impeach the verdict; the evidence, as a whole, fully
warranted the conviction, and there is no good cause for a new
trial.

March 18, 1895.

Indictment for murder. Before Judge CLARK. Ful-
ton superior court. September term, 1894.

ARNOLD & ARNOLD, for plaintiff in error.

J. M. TERRELL, attorney-general, and C. D. HILL,
solicitor-general, *contra*.

LUMPKIN, Justice.

1. It is the right of counsel conducting the defense of
one charged with crime, to file a special plea alleging
that the accused is insane at the time of the trial; and
when such a plea is filed, it becomes the duty of the
court to cause the issue thus made to be first tried by a
special jury; and if the plea is found to be true, an order
should be passed committing the accused to the lunatic
asylum. In a trial of this kind, the merits of the accu-
sation against the accused are not involved or passed
upon. When, however, no such plea is filed, and the ac-
cused goes to trial upon the general plea of not guilty,
he may show under that plea that he was insane at the
time the alleged crime was committed, and therefore
legally irresponsible for the same. The rules above stated
are well established in the criminal procedure of this
State, and no citation of authority in support of them
need be made.

At the trial of the case now under investigation, the
judge undertook to state these rules to the jury. It was
perfectly proper to inform them as to the right of the
accused to show he was insane at the time he commit-
ted the homicide, but there was, perhaps, no occasion
for explaining to them the nature and purpose of a spe-

cial plea alleging insanity at the time of the trial, as no such plea had been filed. We cannot see, however, that so doing affords any reason for granting a new trial.

While it is true that counsel for the accused contended he was insane at the time of the trial, they did not choose to present this special plea and have it first determined; and although, by reason of the instructions of the court, the jury may have been made aware of his right to present such a special plea, it is not at all probable that this operated injuriously against him, because the court very clearly and distinctly informed the jury that his mental condition since the commission of the homicide, and at the very time of the trial, might be considered by them as throwing light upon the condition of his mind when the homicide occurred; and the question whether or not the accused was insane at the time of the trial was one with which the jury were concerned only in so far as it might throw light upon his mental condition when he took the life of the deceased.

2. The court, among other things, gave the charge quoted in the second head-note, which was but stating, in substance, the general rule laid down by this court as far back as the case of *Roberts* v. *State*, 3 *Ga.* 310, in the following language: "If a man has reason sufficient to distinguish between right and wrong in relation to a particular act about to be committed, he is criminally responsible." The same rule was announced in *Choice* v. *State*, 31 *Ga.* 424, and has been uniformly recognized by this court, so far as we are informed, up to this date.

In *Roberts'* case, *supra*, it was also stated that an exception to the general rule exists where a man has sufficient reason to distinguish between right and wrong as to a particular act about to be committed, yet in consequence of some delusion the will is overmastered and there is no criminal intent. But the qualification was added, that the act itself must be connected with the pe-

culiar delusion under which the person is laboring.
Judge NISBET, in commenting upon this exception, refers
to the celebrated case of The King *v.* Hadfield, 27 How.
St. Tr. 1281, and the great speech of Mr. Erskine which
"shed new light upon the law of insanity."

In *Danforth* v. *State,* 75 *Ga.* 614, the present Chief
Justice, who was then upon the circuit bench, after stat-
ing in his charge the general rule as above mentioned,
gave the accused the benefit of an exception to the effect
that he was irresponsible if the killing was done under
some irresistible impulse, the result of a diseased and
disordered mind, which overcame his will and took away
his power of self-control, provided the act itself was con-
nected with the peculiar delusion, if any, under which
he was laboring at that time. Justice HALL, in deliver-
ing the opinion of this court, remarked in general terms,
on page 628, that the charge referred to was full, fair
and impartial, and quite as favorable to the accused as
under the law could have been asked.

In *Fogarty* v. *State,* 80 *Ga.* 450, the trial judge was
requested, among other things, to charge the jury as
follows: "If the defendant commit an assault, knowing
it to be wrong, when driven to it by an uncontrollable
and irresistible impulse, arising not from natural passion
but from an unsound condition of mind, he is not crimi-
nally responsible." Other requests to a somewhat simi-
lar effect were also presented. This court held that there
was no error in refusing to give these requests in charge;
and it is stated in the opinion that the court declined to
review its previous rulings on the subject presented, see-
ing no reason to doubt their soundness and wisdom.
The facts of the *Fogarty* case are not set forth, but a gen-
eral idea of the nature of the case may be derived from
the concluding sentence of the opinion, on page 468,
where it is stated that: "The defendant was guilty of a
most outrageous and unprovoked violation of the penal

laws of the State; and being guilty, he must suffer the consequences of his unbridled passion." Presumably, therefore, there was nothing in the evidence to show that Fogarty acted under the influence of any delusion or irresistible impulse to commit the homicide for which he was held to be responsible in law.

In the case of *Patterson* v. *The State*, 86 *Ga.* 70, which was an indictment against the accused for an assault with intent to murder his wife, an effort was made to set up the defense that he stabbed her while acting under an insane delusion and an irresistible impulse. The trial judge, in excluding certain evidence offered for this purpose, expressed an opinion adverse to a defense of this character; but this court declined to pass upon the correctness of this opinion in the abstract, and upheld the rejection of the evidence for another reason.

Whatever may be deducible from the foregoing cases, there seems to be no real necessity in the case now under consideration to discuss to what extent the general rule for testing insanity, above stated, may or may not be varied with reference to delusions or irresistible impulses. The defense, as we understand it, was general insanity, and not that the accused was a monomaniac or afflicted with any particular type of insanity. There was no evidence of special dementia, nor was it sought to be shown that, while the accused may in a general way have known the difference between right and wrong, he was, upon any particular subject, of defective mind. Certainly there was no proof authorizing the conclusion that, in taking the life of King, the accused was acting under any special delusion in connection with that act, or that in committing it he was actuated by an impulse which, from weakness of will produced by mental disease, he was utterly incapable of resisting. The evidence does show that on various occasions before the homicide, the accused manifested eccentricity of mind

and did things which would hardly be expected from persons of sound common sense and of perfectly well-balanced minds. It was also shown that he had certain erratic ideas and notions which would not probably have been entertained by a thoroughly sensible and clear-headed man. But putting all these things together, they did not amount to more than showing that up to the time of the homicide the accused was more or less eccentric in mind and had certain marked peculiarities of thought and conduct. They would hardly have justified the conclusion that whatever infirmity he had was insanity of any particular form, though they may have manifested a decided tendency to general *dementia*; and if at the time of the trial he was, as his counsel contended, really insane, it was but the outcome of previous indications which had not gone to the extent of rendering him mentally irresponsible at the time of the killing.

The trial judge was not requested to charge upon the subject of delusions or irresistible impulses, and would, in our opinion, have been justified in declining so to do for the want of evidence warranting instructions upon these subjects, even if it would, in a case of a different character, have been proper to qualify the general rule we have already mentioned as being quoted in the second head-note. We therefore simply rule that, in this case, the instruction given was proper and right, and we do not now undertake to say whether, under different facts, it would or would not be the duty of the court to modify this instruction by stating exceptions relating to special phases of alleged mental irresponsibility.

3. The court undertook at some length to state and explain to the jury the different forms and kinds of insanity. The definitions given may not have been comprehensive enough to include every degree and type of this disease; and it may be that the language employed was not, in all respects, perfectly accurate. We do not,

however, feel disposed to enter into a discussion of these questions, nor do we think we are able to give any better presentation of the subject than was done by our experienced and learned brother of the circuit bench. It is, at this time, only necessary to say that in telling the jury what insanity was, and in stating the different forms in which it appeared, he did not invade their province in passing upon questions of fact involved in the case on trial; nor did he, in our opinion, say in this connection anything which could have resulted in any harm to the accused.

4. The court gave to the jury another instruction, the nature of which is indicated in the 4th head-note. We are strongly inclined to the belief that this instruction expresses nothing but the truth, though it may not have been appropriate for the court to inform the jury that insanity in all its forms was liable to become worse, and that it generally ended in complete *dementia*. Still, it would require somewhat of a strain to hold, as was contended, that so doing was expressing an opinion as to the facts of the pending case.

It was also contended that this instruction was hurtful to the accused for an additional reason. His counsel claimed he was insane while the trial was progressing, which the State of course denied. The argument here was, that if the jury were of the opinion that the accused was not insane at the trial, they would have been led by this instruction to believe he could not have been so at any previous time, because, if he ever had been, he would, according to the charge of the court, have been bound to become worse, and therefore would undoubtedly manifest decided insanity at the trial. This argument, it will be perceived, will fall to the ground if, in point of fact, the appearance and symptoms of the accused during the trial were such as to manifest a then existing condition of insanity or imbecility; and be-

sides, as has already been stated, the jury were told that they could consider his then condition as illustrative of the state of his mind at the time of the homicide; and under the charge as a whole, the jury, who were doubtless sensible men, would never have found the accused guilty if they had not been satisfied that, whatever his condition at the trial may have been, he was legally responsible when he shot King down in the street.

5. The propositions stated in the 5th head-note are sufficiently supported by the decision of this court in *Danforth's* case, *supra*, and that of *Carter* v. *State*, 56 *Ga.* 463.

6. It would hardly be profitable to enter upon a full discussion in detail of all the grounds of the motion for a new trial made in this case. We have carefully examined the charges complained of, and if erroneous at all, they contain nothing which would justify this court in granting a new trial. Indeed, the charge as a whole was a very excellent one.

Counsel for the accused filed a special plea admitting the homicide with which he was charged, but denying his responsibility under the law because of his alleged insanity at the time the deed was committed; and thereupon claimed the right to open and conclude the evidence and the argument. The court struck the plea, and refused to allow this privilege. Both these rulings were correct. See, again, *Danforth's* case.

There was much evidence bearing upon the alleged insanity of the accused. The newly discovered evidence was merely cumulative upon this question.

It was alleged that certain irregularities and improprieties were committed by the court and by counsel for the State during the progress of the trial. The grounds of the motion for a new trial relating to these matters were not, however, approved.

The grounds alleging misconduct on the part of the

jury in reading newspaper reports of the trial were sufficiently disproved by the affidavits of all the jurors. Additional affidavits made by two of the jurors were apparently in conflict with those to which they originally deposed; but these latter affidavits could not be received nor considered for the purpose of impeaching the verdict. *Hill* v. *State*, 91 *Ga.* 153.

We have given the evidence in this case a very thorough examination and consideration. In our opinion, it fully warranted the jury in reaching the conclusion that, at the time of the homicide, the accused was not insane; and we find no reason to disturb the verdict. Upon the assumption that the accused knew what he was doing, a more deliberate, cold-blooded and wicked murder was never, perhaps, committed within the borders of this State. In view of all the evidence, we are unwilling to take upon ourselves the responsibility of saying the verdict does not express the real truth of the case. If the unfortunate man who is doomed to death had, originally, a somewhat diseased mind, and because of the advancing tendency of his mental infirmity, is now actually insane, the law, in its humanity, will avert from him the penalty of death and commit him to the lunatic asylum. If he is not insane, he must resign himself to the fate brought upon him by his own lawless and terrible act.      *Judgment affirmed.*