## CURRIE *v.* THE STATE.

1. The principles of law stated in the requested instructions as to mental capacity as a basis of responsibility for crime, having been covered, in so

far as applicable, by the charge as given to the jury, no error is shown in the refusal of the requests.

2. An instruction upon voluntary or involuntary manslaughter was not required by the evidence as a whole.

3. Where the general charge was sufficiently full and fair to give the accused the benefit of all the evidence relating to insanity for the purpose of raising a reasonable doubt of his guilt, it was not cause for a new trial that the court (without a request) failed to " state that the evidence of insanity could be considered with the other evidence  .  .   in determining whether or not the defendant was guilty beyond a reasonable doubt," and that if on that consideration the jury entertained a reasonable doubt of his guilt they should acquit him. Two JJ. dissent.

4. The charge, that " If the State shows that the defendant did the things that go to constitute murder, convict him unless he carries the burden then of showing, by the preponderance of the evidence, that he is not mentally responsible for the act that the State charges he committed," was not subject to the exception that it expressly excluded from the consideration of the jury the evidence of insanity in determining whether all the evidence raised a resonable doubt of guilt. Two JJ. dissent.

5. On a trial for murder, an illegitimate third cousin of the slain man was disqualified to serve as a juror, although the relationship was on the paternal instead of the maternal side. Two JJ. dissent.

No. 3426.  JULY 14, 1923.

Indictment for murder. Before Judge Hardeman. Toombs superior court. August 30, 1923.

*Giles & Sharpe* and *A. A. Lawrence,* for plaintiff in error.

*George M. Napier, attorney-general, Walter F. Grey, solicitor-general,* and *Seward M. Smith, asst. atty.-gen.,* contra.

HINES, J.  1. The court refused, although duly requested in writing, to charge the jury as follows:  (1) " If you find from the evidence that the mind of the defendant at the time of the killing was diseased, that by reason of such mental disease his will power was impaired, that by reason of such impairment, so caused, he did not have sufficient will power to refrain from committing the act, and that the act was the product of such mental disease, he was not responsible for the act and it would be your duty to acquit the defendant.  To be held criminally responsible, a man must have reason enough to be able to judge of the character and consequence of the act committed, and he must not have been overcome by an irresistible impulse arising from mental derangement."  (2) " In order to constitute a crime, a man must have intelligence and capacity enough to have a criminal intent and purpose; and if his reason and mental powers are either so deficient that he has no will, or if through the overwhelming power of mental dis-

ease his intellectual power is for the time obliterated, he is not a responsible moral agent, and is not punishable for criminal acts." The principles of law, in so far as correct and applicable, embodied in the foregoing requests, were fully and fairly covered by the court in the general charge; therefore these grounds of the motion do not show error.

2. The third ground of the amendment to the motion for a new trial complains that the court erred in charging the jury as follows: "There is no manslaughter involved in this case, either voluntary or involuntary. Either the defendant in this case is guilty of murder and should be convicted, or the State has failed to make good its case beyond a reasonable doubt, and he should be acquitted. Or he has made good by the preponderance of the evidence, if you should so find, his contention of mental irresponsibility, and should be acquitted and discharged by this jury." The testimony relied upon to show manslaughter was that of the witness McLeod, who testified, with reference to an alleged confession of the defendant, as follows: "He [defendant] started to get the whisky, and Burleigh asked him to pay his car-fare before he went, and he told him to wait until he came back, and Burleigh took out his knife and started towards him, and he said he pulled his pistol and Burleigh wheeled to run, and he said he shot him." The testimony here quoted is a disconnected part of the alleged confession related by the witness. Taken as a whole, the evidence did not require a charge on the subject of either voluntary or involuntary manslaughter.

3. The fourth ground of the amendment to the motion for a new trial complains that "the court did not at any place in its charge state that the evidence of insanity could be considered with the other evidence of the case in determining whether or not the defendant was guilty beyond a reasonable doubt, and that if in considering all the evidence including the evidence of insanity the jury entertained a reasonable doubt as to the defendant's guilt they should acquit him." The court did charge fully and fairly upon the subject of reasonable doubt as applicable to the entire evidence. The court also charged that "in all cases of circumstantial evidence, the circumstances must not only be consistent with a man's guilt, but must be inconsistent with his innocence, and must exclude every other reasonable conclusion or hypothesis

save and except only the guilt of the accused." Finally, at the conclusion of the charge, with reference to the form of the verdict, the court again charged that if " the State has failed to make good its case beyond a reasonable doubt, the defendant should be acquitted." The evidence bearing on the question of insanity should, of course, be duly considered, along with all of the evidence in the case, in determining whether there was a reasonable doubt of the guilt of the accused. In the absence of a proper written request, mere failure of the court to charge the principles just indicated is not cause for a new trial, the general charge being sufficiently full and fair on the subject of reasonable doubt to give the accused the benefit of all the evidence relating to his alleged insanity, for the purpose of casting a doubt upon his guilt. *Carr* v. *State,* 96 *Ga.* 284 (5) (22 S. E. 570) ; *Brown* v. *State,* 148 *Ga.* 264, 265 (96 S. E. 435).

4. The fifth ground of the amendment to the motion for a new trial complains that the court charged as follows : " If the State shows that the defendant did the things that go to constitute murder, convict him unless he carries the burden then of showing, by the preponderance of the evidence, that he is not mentally responsible for the act that the State charges he committed." The errors alleged are : (1) that the judge " did not here or elsewhere charge the jury that the evidence of insanity could be considered with the other evidence in the case in determining whether or not the defendant was guilty beyond a reasonable doubt, and if in considering the evidence as a whole, including that of insanity, the jury entertained a reasonable doubt, they should acquit him ;" and (2) that this instruction expressly excluded from the consideration of the jury the evidence of insanity in determining whether it and the other evidence raised a reasonable doubt of the defendant's guilt. A majority of the court are of the opinion that the judge did not err in giving this instruction. *Carr* v. *State, Brown* v. *State,* supra. *Peek* v. *State,* 155 *Ga.* 49 (116 S. E. 629).

5. In the sixth ground of the amendment to his motion for new trial, the defendant alleges and complains that he did not have a fair and impartial trial, because Wade Mitchum, a member of the jury who convicted him, was the illegitimate third cousin of the deceased, this relationship arising on the paternal side of

the juror, of which relationship he and his counsel did not have knowledge until after his conviction. Does the proof establish this relationship? M. M. Williamson, in his affidavit attached to the motion for new trial, testified as follows: " I am 60 years old and a citizen of said county, and am a son of Lecy Williamson. The deponent's mother, Lecy Williamson, and Millie Phillips were own sisters; that Millie Phillips was deponent's aunt and was the mother of Ephraim Phillips; and that Ephraim Phillips was the father of Burleigh Phillips. That deponent and Burleigh Phillips are second cousins. That deponent and A. S. Williamson are brothers, and that Lecy Williamson was A. S. Williamson's mother. That A. S. Williamson is the father of Wade Mitchum, and that said Wade Mitchum was one of the jurors who tried the case of the State vs. Lee Curry, at the May adjourned term of Toombs superior court, 1922, charged with the killing of Burleigh Phillips, in which said case a verdict of guilty was returned by the jury trying the same, against the said Lee Curry. It is common repute in the community that A. S. Williamson is Wade Mitchum's father, and that the said A. S. Williamson does not deny the same, in fact admits it. That the said Wade Mitchum admits the same, and calls the said A. S. Williamson Daddy and calls this deponent Uncle; and deponent attaches hereto an order written by the said Wade Mitchum to this deponent in which he addresses deponent as " Dear Uncle." The said A. S. Williamson is second cousin to the said Burleigh Phillips, and the said Wade Mitchum was third cousin to the said Burleigh Phillips whom Lee Curry was on trial for killing." The order referred to in the above affidavit is as follows: " Dear Uncle: We are up a tree about feed; loan or sell us two bushels of corn and 50 bundles of oats, and oblige Wade Mitchum." In his affidavit F. B. Williamson swore as follows: " That Wade Mitchum is the reputed son of A. S. Williamson. . . That the mother of said Wade Mitchum swore that said A. S. Williamson was the father of the said Wade Mitchum; and it is generally reputed in the community and is common repute therein that the said A. S. Williamson is the father of the said Wade Mitchum, and that the said A. S. Williamson admits the same. That the said Wade Mitchum resembles very much the said A. S. Williamson, talks and acts like him, and to the best of deponent's knowledge and belief A. S.

Williamson is Wade Mitchum's father." A. S. Williamson testified by affidavit as follows: " I am 54 years of age and a citizen of said county, and am a son of Lecy Williamson. That deponent's mother, Lecy Williamson, and Millie Phillips were own sisters. That Millie Phillips was deponent's aunt and was the mother of Ephraim Phillips, and that Ephraim Phillips was Burley Phillips' father. That deponent and Burley Phillips were second cousins. That deponent is the father of Wade Mitchum, or at least his reputed father, the mother of the said Wade Mitchum having sworn that deponent was the father of the said Wade Mitchum, and it being common repute in the neighborhood and generally recognized that deponent is the father of the said Wade Mitchum, which fact is admitted and recognized by deponent. That he is the father of the said Wade Mitchum."

In this ground of the motion for new trial it is stated that this juror was a third cousin of the deceased. The trial judge specifically approves the statements of fact therein as true and correct. Furthermore, in his order overruling the motion for new trial the trial judge makes this statement: " It appears that the juror alleged to be related is not related in any way recognized by law." Taking the certification of the facts in the amended motion for new trial and the above statement and his order overruling the motion, it clearly appears that the trial judge found, as a matter of fact, that the juror was the illegitimate third cousin of the deceased, and that he held that while this was true such relationship was not recognized by law. From the above testimony, which states all of the evidence relating to the kinship of this juror to the deceased, and from the fact that the judge specifically approved the recital of this relationship, and from the fact that the judge in his order treated this illegitimate relationship as established, but held, as a matter of law, that it did not disqualify the juror, I am forced to the conclusion that the relationship of the juror to the deceased was fully established. Considering, but not admitting, that the relationship could not be established by general repute outside of the family circle, it was established by general repute in the family circle, and by the direct testimony of the reputed father. The State introduced no evidence to rebut this testimony of the defendant, and it stands uncontradicted. But the position taken by the able trial judge, as we understand

it, is that a bastard, the relationship arising on the paternal side, is not an incompetent juror to try a defendant charged with murder, because of his kinship to the deceased, because the law does not recognize such kinship. At first blush, this position might seem to be well taken. It is based upon the ancient common law, that a bastard is the son of no one, but is the son of the people. *Cui pater est populus, non habet ille patrem. Cui pater est populus, pater est sibi nullus et omnis.* 1 Coke upon Littleton, 123 a. Being the son of no one, he could have no paternal relatives. A challenge "propter affectum, for affection, or partialitie," is a principal challenge to the poll. So a challenge to a juror on the ground of relationship is a principal challenge to the poll. "A bastard," says Sir Edward Coke, "cannot be of kindred to any; and therefore it can be no principal challenge." 1 Coke upon Littleton 157 a. So, if this were the law of the land, this juror would not have been disqualified to try the defendant. But the rule that a bastard was *nullius filius* applied only to cases of inheritances. Garland *v.* Harrison, 8 Leigh (35 Va.), 368. So it has been held that bastards can not marry within the prohibited degrees. Hains *v.* Jeffell, 1 Lord Raymond, 68. So incest may be committed with an illegitimate female. Brown *v.* State, 42 Fla. 184 (27 So. 869); People *v.* Lake, 110 N. Y. 61 (17 N. E. 146, 6 Am. St. R. 344); Clark *v.* State, 39 Tex. Cr. R. 179 (45 S. W. 576, 73 Am. St. R. 918). These cases upon marriage with illegitimates and upon incest committed with bastards can only be upheld on the ground that the rule that a bastard is *nullius filius* is applicable only to inheritances.

We can not escape the fact that the stern and harsh rules of the common law, governing this unfortunate class, have been softened with the advance of our civilization. By the common law the putative father was under no obligation to support his bastard child. Moncrief *v.* Ely, 19 Wend. 405; Simmons *v.* Bull, 21 Ala. 501 (56 Am. D. 257); Brisbin *v.* Huntington, 128 Iowa, 166 (103 N. W. 144); Todd *v.* Weber, 95 N. Y. 184 (47 Am. R. 20); State *v.* Tieman, 32 Wash. 294 (73 Pac. 375, 98 Am. St. R. 854). Now under our law the father of a bastard is bound to maintain him. Civil Code (1910), § 3027. "At English common law an illegitimate child was treated as nullius filius, and as such incapable of inheriting from either the putative father or the mother, and

without heirs, excepting those of his own body." 7 C. J. 959, § 41. Under our law they can inherit from their mother, and from each other, children of the same mother, in the same manner as if legitimate. If a bastard dies leaving no issue or widow, his mother, brothers, and sisters inherit his estate equally. Civil Code (1910), § 3029. Brothers and sisters of the mother of a bastard or their descendants, or the maternal grandparents of such bastard, under certain circumstances, inherit his estate. § 3030. The trend of the law is toward the relaxation of the harsh rules of the common law on this subject. But we think it is clear that the law fixing the status and rights of bastards does not apply when we come to determine the competency of a bastard to try the slayer of one of his kinsmen. To do so would be to give to a bastard greater rights and greater privileges than a legitimate relative possesses. The reason which disqualifies the legitimate kinsman from serving upon a jury disqualifies the illegitimate kinsman from sitting. Both lack the impartiality which fits one to sit as a juror. In fact, the ruling in *O'Berry* v. *State,* 153 *Ga.* 644 (113 S. E. 2), controls this case. So we feel bound to hold that the defendant is entitled to a new trial on this ground.

6. As we grant a new trial, we express no opinion upon the sufficiency of the evidence.

*Judgment reversed. All the Justices concur, except Beck, P. J., and Gilbert, J., dissenting.*

RUSSELL, C. J., specially concurring. There is no question on my mind that the judgment overruling the motion for a new trial should be reversed upon several of the grounds therein set forth. I do not agree with the first paragraph of the opinion, for I think that the plaintiff in error was entitled to have the request therein stated given in charge to the jury, and that the language employed by the judge in his charge was not a sufficient substitute for the concrete statement which the plaintiff in error desired and to which he was entitled. For lack of time I shall not enter into any discussion of reasons which prevent me from giving my full assent to several statements contained in the opinion, and I shall only advert to two of the grounds of the motion. We all agree that the court did not, in connection with his instructions on the burden of proof on the plea of insanity, or elsewhere, state to the jury that the evidence of insanity could be considered along

with the other evidence in the case in determining whether the defendant was guilty beyond a reasonable doubt, and if after a consideration of the evidence, including the evidence of insanity, the jury entertained a reasonable doubt as to the defendant's guilt they should acquit him. I think the trial court made it very plain to the jury that if the defendant failed to carry the burden of establishing his insanity by a preponderance of the evidence, then the evidence on the subject of insanity could serve no other or further purpose in behalf of the defendant, but should be entirely disregarded. Some of my honorable colleagues are of this opinion. The question is one of great importance. In my opinion in the trial of a criminal case the presumption of innocence is an ever-present, all-essential element of the defense of one accused of crime. It should never be minimized, overlooked, or withdrawn from the consideration of the jury from the time the defendant pleads not guilty until the verdict has been signed by the jury. The law in its humanity has provided this presumption, and it is in the nature of evidence, — it is *some evidence* in his behalf. The court's language was clear and his expression unmistakeable when he expressly told the jury in the latter part of his charge that "if the State shows that the defendant did the things that go to constitute murder, convict him unless he carries the burden then of showing by a preponderance of the evidence that he is not mentally responsible for the act the State charges he committed."

I consider it a fixed rule in this State that the judges of the trial courts should instruct the jury on indirect defenses such as good character, alibi, and insanity, in substance and effect that evidence as to either of these defenses may be considered along with the other evidence in the case, even though the jury may not determine that the particular defense has been established by the preponderance of the evidence, in determining whether or not they are satisfied of the guilt of the defendant beyond a reasonable doubt. If the evidence as to good character, alibi, or insanity, although the Code provides that the defense in either case must be proved by a preponderance of the evidence, nevertheless engenders in the minds of the jury a reasonable doubt as to the guilt of the defendant, they should acquit him, and a failure to so charge is error requiring a reversal. In my opinion no request for instructions is necessary to invoke instructions upon this subject, although

in the case at bar an apt, pertinent, and correct request for in-structions was presented and refused.

In *Raysor* v. *State,* 132 *Ga.* 237-239 (63 S. E. 786), this court said: " The criticism of the charges sub judice goes to the point that the court failed to instruct the jury that evidence introduced to establish the defense of alibi should be considered on the general case with the rest of the evidence, and that if a reasonable doubt of guilt be raised by the evidence as a whole, the doubt must be given in favor of innocence. Every instruction in a criminal case should make clear that the burden is on the prosecution to prove the defendant's guilt of the crime charged beyond a reasonable doubt; and especially should there be no relaxation of the rule in cases where the defense of alibi is involved, and the jury are instructed that the onus is on the accused to prove his alleged alibi to their reasonable satisfaction. There should never be any confusion in the charge in presenting the distinction between the burden resting upon the State to prove the defendant's guilt beyond a reasonable doubt, and the burden of the accused to verify his alleged alibi to the reasonable satisfaction of the jury. A charge which excludes the evidence concerning the alibi from being weighed by the jury on the subject of reasonable doubt as to the defendant's guilt is erroneous."

In the case of *Carr* v. *State,* 96 *Ga.* 284 (5) (22 S. E. 570), which is cited in the opinion of the majority, the court said: " The legal presumption being that every person is sane, and that every such person remains so until the contrary is shown, it is essential to the establishment of the distinctive defense of insanity, as such, that insanity at the time of the commission of the offense be proved by a preponderance of the evidence; and the burden of so doing rests upon the accused. If this particular defense is not thus established, the jury would not be authorized to acquit upon the same. The evidence bearing on the question of insanity should, however, be duly considered in connection with all the other evidence, in determining whether or not, upon a view of the whole case, there was a reasonable doubt of the guilt of the accused." In this case the court did not reverse the decision of the trial judge, because the charge on reasonable doubt in that case was held to be broad enough to cover the evidence of insanity adduced in that particular case. In the case at bar, however, in the

concluding part of his charge the court said that if the State shows that the defendant did the things that go to constitute murder, the jury must convict him unless he carries the burden of showing by the preponderance of the evidence that he is not mentally responsible, and thus excluded from the consideration of the jury the question of whether or not the insanity attempted to be proved could be a factor which could engender in their minds a reasonable doubt of the guilt of the accused.

In the case of *Ryder* v. *State,* 100 *Ga.* 528 (5) (28 S. E. 246, 38 L. R. A. 721, 62 Am. St. R. 334), this court said: " In order to render the distinctive defense of insanity available as a basis for an acquittal, the burden is upon the accused to show affirmatively, by a preponderance of the evidence introduced at the trial, that he was insane at the time the act for which he is indicted was committed. Though this burden may not be successfully carried so as to authorize a verdict of guilty upon this particular ground, it is nevertheless the duty of the jury to consider the evidence touching the alleged insanity in connection with the other evidence in the case, and then in view of it all determine whether or not a reasonable doubt of the guilt of the accused exists in their minds." While the burden is on the defendant to show by a preponderance of the testimony that he is insane, nevertheless it is expressly provided that the true question in criminal cases is whether there is sufficient evidence to satisfy the mind and conscience of the jury beyond a reasonable doubt. Penal Code, § 1013. No matter what defense may be offered, no matter upon whom the burden of proof may lie, if there is a reasonable doubt in the mind of the jury as to the guilt of the accused, whether it come from the defense of insanity, good character, alibi, or other defense, the jury are authorized to acquit; and they should be so instructed. The whole case is for the jury. The defenses are not to be singled out. The jury is to pass on all the issues of fact in the aggregate, as a whole; and if all of these issues, or any of them, raise a reasonable doubt, the jury should acquit the defendant and they should be so instructed by the court.

The question raised by the sixth ground of the amendment to the motion for a new trial is as to the disqualification of a juror upon the ground that he was related to the prosecutor within the prohibited degrees. As pointed out in the decision of the majority

it was unquestionably shown that the juror was an illegitimate, but there can be no question as to his relationship in a physical sense to the prosecutor so far as testimony can be judged by the usual rules of evidence. As stated in the opinion of the majority, the juror was accustomed to call his putative father " daddy " and his father's brother " uncle," and the putative father acknowledged him as a son, and one of the uncles who was introduced as a witness also testified to the same facts and seemed to entertain no doubts of the relationship. The mother of the bastard laid the paternity of the child to the same putative father; and who better than she could know? Some point is made on the fact that the mother herself was not introduced in the present case, but that another witness merely related on the stand what the mother of the juror had stated in regard to his paternity; and that therefore the testimony on this point is mere hearsay. Proof of pedigree by hearsay is recognized everywhere as perhaps the leading exception to the rule which generally excludes hearsay testimony. In my opinion the objection would be potent if the rule applied by the lower court in this case as to this juror referred to a case involving the law of inheritance. I recognize in all its broadness that as to inheritance a bastard is nullius filius. This rule which originated in the ecclesiastical law was wisely designed to encourage matrimony and morality, and it rests upon the soundest public policy; but in my opinion, when it is sought to remove from consideration the principle that blood is thicker than water in the determination of whether a particular person is or is not subject to bias, and as to whether or not this individual would be a fair and impartial juror, the rule as to inheritance comes in conflict with a much higher principle of the law — the right of every litigant to have a fair and impartial jury to pass upon his rights. If this is important as to mere earthly property, how much more paramount is the right when life or liberty is involved? In my opinion the rule which debars a bastard from inheriting, other than through his mother and her kin, does not in any wise affect the right of every citizen to have his case passed upon by jurors like Cæsar's wife, who was required to be above suspicion.

Aside from what has been so well said by Mr. Justice Hines on the subject of the disqualification of the juror, I am of the opinion that it is an essential prerequisite to a fair and legal trial that

the jurors be homines bonos omni exceptione majores. "As to jurors the prime requisite (seemingly universal in its application in this State) is that in every trial both parties are entitled to a jury wholly composed of homines bonos omni exceptione majores. And while the court has not been slow to act upon any circumstance indicating that a party had notice or knowledge of a disqualification, and to deal with it as a waiver of the defect, still it seems to be well settled in this State that even after verdict, where it does not appear that the complaining party had knowledge or notice of the juror's disqualification, the verdict will be set aside, when it is made to appear that, owing to the operation of bias or prejudice, the attitude of any juror negatived or nullified this essential element. In *Georgia Railroad* v. *Cole, 73 Ga. 713*, it was said that "A jury composed of men who are not lawful men — men whose relationship to the parties renders them incompetent as jurors — can not render a lawful verdict. If the parties consent to the jurors, or have knowledge of their incompetency, then they will be held to waive the same. It can not be said that the defendants in error have had their case tried, — certainly not legally; and although the verdict may be in accordance with the facts, and such as a lawful jury should have rendered, yet it is no verdict, and the court did right to set it aside." See also *Smith* v. *State, 2 Ga. App. 574 (59 S. E. 311)*; *Hubbard* v. *State, 5 Ga. App. 599 (63 S. E. 588)*. In *Central R. Co.* v. *Mitchell, 63 Ga. 173, 180*, Justice Jackson, in passing upon the ruling of the lower court as to the disqualification of one of the jurors, who was an employee of the defendant (it not appearing in what capacity he was employed), said: "We think that the employee of the company was properly rejected as a juror. To sit on the case he must be 'omni exceptione major.' The servant of the company is not. It is almost impossible, however incorruptible one may be, not to bend before the weight of interest; and the power of employer over employee is that of him who clothes and feeds over him who is fed and clothed. Hence the common law excluded all servants, and our statutes have nowhere altered the rule, and it should not be altered." In support of this proposition the learned Justice quoted from 3 Chitty's Blackstone, 363, Bacon's Abridgment, Juries, 2, 347, 5, 353, Tidd's Practice, 852, 3. His logic was so cogent and his conclusion so well expressed that it is used as a

part of the text in Judge Thompson's Revision of Merriam on Juries, § 185. "In Stumm v. Hummel, 39 Iowa, 478, it was held that a person sustaining close business relations with either of the parties was incompetent to sit in a cause, — for example, a partner in business with one of the parties. And in Hubbard v. Rutledge, 57 Miss. 7, the same principle was applied where the juror was the clerk of one of the parties to a civil suit. In Merriam on Juries, a New Brunswick case is cited, in which it was held that one in the employment of a stockholder is not disqualified from serving as a special juror in a case to which the corporation is a party; but it is so plain that this ruling is directly in conflict with the principle announced in *Central R. Co.* v. *Mitchell,* supra, that it is not even of persuasive value." *Temples* v. *Central of Ga. Ry. Co.,* 15 *Ga. App.* 115, 117 (82 S. E. 777). I am authorized to say that Mr. Justice Atkinson agrees with the conclusions reached in this concurrence.