## FARMER v. THE STATE.

1. The killing of another because of a past attempt by him to debauch the slayer's wife is not justifiable homicide. It is only where there is an absolute necessity that a killing be perpetrated to prevent adultery that the case will stand upon the same footing of reason and justice with other cases of justifiable homicide under section 4334 of the code.

2. The use of grossly improper remarks by counsel for the State in his argument to the jury is not cause for a new trial, when the verdict is fully as favorable to the accused as the evidence would warrant, and when it appears that the presiding judge, upon having his attention called to the misconduct of the counsel, promptly ordered him to confine himself to the evidence, which order was obeyed, and counsel for the accused made no motion to have a mistrial declared, nor preferred any request to charge the jury on the subject. The court, however, should have unequivocally rebuked the counsel and instructed the jury to disregard entirely the improper remarks, even without a request. The omission to to do this is attributable alone to inadvertence.

3. On the facts disclosed in the record, there was no error in holding a night session of the court, or in the direction given the next morning by the court to the progress of the trial.

4. There was no error as against the accused in the charges complained of. The verdict for voluntary manslaughter was fully as favorable to him as the evidence authorized, and the court properly refused to grant a new trial.

June 12, 1893.

Before Judge HUTCHINS. Jackson superior court. February term, 1893.

Farmer was indicted for murder, and was found guilty of voluntary manslaughter. His motion for a new trial was overruled, and he excepted. The motion contains the following, in addition to the general grounds:

1. The court erred in refusing to charge as follows: "Where the defendant justifies the killing upon the ground of self-defence, in order to make good the defence it must appear that at the time of the killing the danger was so urgent that it was necessary for the defendant to kill in order to save his own life. But where the defendant justifies the killing upon the ground that

the deceased had attempted to debauch his wife, the doctrine that the danger must be imminent at the time of the killing does not apply. You may consider any evidence of indignities offered wife of defendant by deceased prior to the killing, and say whether or not the homicide was justifiable. The statute is that ' All other instances which stand upon the same footing of reason and justice as those enumerated, shall be justifiable homicide.' You are to consider the evidence and say whether or not the present case 'stands on the same footing of reason and justice as the cases of justifiable homicide specified in the code'." This was not given in the form requested, but the code section was given in charge with the judge's explanation of its meaning.

2. S. J. Tribble, of counsel for the State, in his argument to the jury said: " This is only one of the many instances where the rich landlord shoots down a poor tenant, and it should be stopped." Also : " Old man Farmer [the father of defendant] said he had enough trouble on his hands. Yes, gentlemen of the jury, he has. This is the second one of his boys who has committed the offence of murder, and the county demands at your hands that these murderers be convicted and hanged." Also : " Two other sons of old man Farmer are murderers." The defendant assigns error, in that the court did not stop such argument and statements, and instruct the jury that they were to pay no heed to them. The court certifies this ground with the qualification, that when the attention of the court was called by counsel to the objection that the young associate counsel of the State was indulging in appeals to the jury, not, as counsel considered, authorized by the evidence (the precise language not recalled), the court cautioned him and ordered him to confine himself to the evidence in the case, and he conformed; and there was no further complaint or objection, and, so far as the

court heard, some of the statements objected to were
founded on evidence admitted without objection.

3. The trial judge forced counsel to proceed with the
case until late in the night of the second day of the trial,
when Mr. Thomas, counsel who had prepared the case
for trial and who was leading counsel and the one de-
fendant most relied on, was sick and unable to proceed
and so stated to the judge. The night was bad and
rainy, and the ground muddy; and being forced to go
on with the case that night, Mr. Thomas was taken sick,
and the next morning was desperately sick and unable
to work, and in consequence thereof could not properly
argue the case. He informed the judge that night that
he was just out of a sick bed where he had been confined
for days, and did not have the physical strength to go
on with the case that night, and asked that the court
take recess until morning, which the court refused to
do. The court makes the following statement as to this
ground: Mr. Thomas inquired of the judge privately,
about the usual hour of recess in the afternoon, whether
or not the court intended to hold a night session, and
was informed that such was the intention, as there were
other parties in jail under indictment for felonies, one
of them for murder, awaiting trial, and the week's
session was drawing to a close. To this Mr. Thomas
may have stated that he was not feeling well, but did
not ask the court to take recess then because of his sick-
ness or indisposition. When, during the night session,
after the argument of two of the counsel in the case had
been heard, the court inquired of Mr. Strickland, part-
ner and associate counsel of Mr. Thomas, whether or
not Mr. Thomas preferred to go on then or wait until
morning, Mr. Thomas having stated, at the hotel while
at the supper table during the short recess, that he was
not well, and complained that there was to be a night
session, Mr. Strickland soon reported that Mr. Thomas

had concluded to go on that night; but the jury being weary and desiring that recess be then taken, it was done. Next morning it was reported that Mr. Thomas was sick, and after suspending the trial for more than an hour, it being stated that he would likely be able to appear and proceed within an hour or two, the court left to Mr. Strickland, the associate counsel, to proceed with the argument himself, or move a continuance on the ground of Mr. Thomas's sickness. Mr. Strickland decided, after consultation with his other associate counsel and client, not to ask for a continuance. About that time Mr. Thomas appeared in court and proceeded to argue the case. Counsel did not make a request in open court or elsewhere that the court take recess until morning on account of his sickness.

4. The court charged the jury : "Having given you in charge the law of justifiable homicide, that is to say, the doctrine of self-defence, defence of family, property, etc., of acting under the fears of a reasonable man that a felony is intended to be committed on his person, habitation or other property,—the instances enumerated by the code where one may kill another and be justifiable in doing so, I am requested to give you in charge section 4334 of the code, and leave you to determine whether the case is one of justifiable homicide under that section. The language of that section is, 'All other instances which stand on the same footing of reason and justice as those enumerated, shall be justifiable homicide,' and has been considered by the Supreme Court to mean that the principles of defence of some sort standing upon the same reason and justice as those enumerated and given in the charge, must enter into the transaction to make the homicide justifiable; and that no case can stand on the same footing of reason and justice as the enumerated cases do, unless defence of some sort— the prevention of some impending or pressing wrong—

enters as an element therein. Defence against some urgent and pressing danger must have operated upon the mind of defendant when he shot and killed deceased, or he was not justifiable. An instance of justifiable homicide standing upon the same footing of reason and justice as those above enumerated in the code under this section, is the killing of a man to prevent him from attempting or consummating an impending adultery with or seduction of his wife, but not to avenge a past adultery with her; for the killing after the act is done, which would have been justifiable homicide to prevent, would be to kill in a spirit of revenge, which the law would not justify. No words, no matter how opprobrious or offensive or insulting, used to or of the defendant or his wife, would make a case standing on the same footing of reason and justice as the cases of justifiable homicide enumerated in the code; for it is expressly declared that provocation by words, threats, menaces or contemptuous gestures, shall not be sufficient to free the person killing from guilt and the crime of murder." The errors specified as to this charge are, (1) that it restricts the jury in the application of section 4334, whereas they should have been left free to say without restriction whether or not the case on trial was an instance which stood upon the same footing of reason and justice as those enumerated; and (2) that it confines the jury to the application of that section and cases standing on the law of self-defence and defence of habitation, etc., whereas one defence set up, and the section of the code under consideration, contemplate cases entirely out of the doctrine of self-defence.

The court charged, in immediate connection with the foregoing: "You will observe that the question we are now on is not the reduction of homicide from murder to manslaughter of some grade, but the absolute and unconditional justification of the killing under this and

other sections of the code on the principle of justifiable homicide. If the killing as above charged was the result of that sudden impulse of passion supposed to be irresistible, and there was not an interval between the provocation given and the homicide, sufficient for the voice of reason and humanity to be heard, sufficient for the passion aroused by the provocation to cool down, then the defendant may be guilty, not of murder, but of voluntary manslaughter, depending upon the nature of the provocation given, but would not be justifiable homicide. Whether there was time between the provocation and the homicide for the passions aroused to cool down in a reasonable man, is a question to be determined by the jury. In the cases enumerated in the code as justifiable homicide, each of them contemplates immediate and pressing danger, the circumstances reasonably believed to be such. It is defence of self, defence of habitation, property, person or family; defence against one who manifestly intends or endeavors by violence to commit a felony on the other; defence against a mob violently intending and endeavoring to enter one's house to assault some person therein; it is defence against real imminent and impending danger. The mere fear of any violence to prevent which the killing is done shall not justify it, for the circumstances must be such as to excite the fears of a reasonable man, and the person killing must act under the influence of such fears, and not in a spirit of revenge. Not only must it be in defence, but must be absolutely necessary in reality, or in his belief or fears as a reasonable man, as the circumstances appear to him, to prevent the attack; and even in the case of self-defence or in defence of wife or child, the danger must be so urgent and pressing at the time of the killing, or as he, under the influence of the fears of a reasonable man, believes them to be, so that in order to save his own life he, as a reasonably cool and coura-

geous man, believes the killing was absolutely necessary. Whenever a homicide is committed in a spirit of revenge for a past offence, or for a provocation by words, etc., it is not justifiable. When done under pressing necessity, or under the fears of a reasonable man to defend life or limb or wife against a felonious attack, it is justifiable. Where the case made is not enumerated in the code and is subject to be put upon this section of the code, it must be shown to stand on the same reason and justice as those enumerated, and not be in conflict with them. Unless it so appears it cannot be justifiable homicide, that is to say, no offence at all." The errors are, (1) that the code section is construed by the judge for the jury without allowing them to consider it themselves, and they are instructed that it may be reduced from murder to manslaughter, whereas the section itself contemplates only justifiable homicide; and (2) that the court coupled the code section under consideration with other sections on the subject of self-defence and made them stand on the same plane, and did not leave the jury to say whether or not they occupied the same or a different plane.

THOMAS & STRICKLAND, for plaintiff in error.

R. B. RUSSELL, solicitor-general, *contra.*

BLECKLEY, Chief Justice.

1. The law classifies cases. The jury determine on the facts in evidence and on the law as given them in charge by the court to what class the particular case belongs. With reference to justifiable homicide the law has specified several instances which will fall within that class and has then added a general description of other instances in these terms: "All other instances which stand upon the same footing of reason and justice as those enumerated, shall be justifiable homicide." Code, §4334. When the enumerated instances to which this general description refers are examined, it is found that

in all of them, without exception, one of the elements is present and impending danger, real or apparent. Another suggestion which arises from an examination of these instances is that the killing must be for prevention, and another that it must be necessary, either really or apparently, as a measure of prevention. Code, §§4330–4333. As these several characteristics either expressly or by plain and manifest implication mark each and every one of the enumerated instances, and as they are characteristics involving the principle and reason on which justification depends, they must, as matter of law, be present in each and every one of the non-enumerated instances in order to put the latter on the same footing of reason and justice with the former. These characteristics are the very things which make up the reason and justice of the enumerated instances, for in penal law the distinction between prevention and revenge is fundamental. Aggressive acts perpetrated to avenge a past injury are never justifiable. This is a rule without any exception. On the other hand, acts done to prevent an apprehended injury are sometimes justifiable and sometimes not. If they are done when the injury is really or apparently about to take place, and if the doing of them is either really or apparently necessary to prevent it from taking place, they are justifiable provided the gravity of the impending injury be such as to warrant the means used in the given instance to prevent its perpetration. The injury attempted or contemplated may be so slight as that the law would rather it should not be prevented at all than that it should be prevented at the cost of human life or of great bodily harm. If the line of thought which we have suggested and pursued be sound, it follows that the law itself virtually says, and consequently that the court may instruct the jury as matter of law, that the killing of a man because of a past attempt by him to debauch the slayer's

wife is not justifiable homicide, and that such a killing
is not upon the same footing of reason and justice as
the instances of justifiable homicide to which §4334 of
the code refers.   Under the evidence there was really
no question for reference to the jury on the subject.  But
even had the prevention of a future' act of adultery
been the occasion of the killing, the danger must have
been present and impending, and the killing to prevent
it, in order to be justifiable, must have been necessary
or at least apparently necessary.  *Jackson* v. *The State,*
October term, 1892.  *Ante,* 271.

2. The facts of the case touching improper remarks
by counsel for the State in his argument to the jury are
set forth in the official report.   It will be noticed that
the cause of complaint as embodied in the motion for a
new trial is somewhat mitigated by the explanatory note
of the presiding judge.   But the impropriety was very
great, and the court should have unequivocally rebuked
the counsel and instructed the jury to disregard entirely
the improper remarks, even without any request to do
so.   The omission to deal thus with the matter is attrib-
utable alone, we think, to inadvertence.   The failure of
the counsel for the accused either to move to have a
mistrial declared or to request any charge to the jury on
the subject and thus to invoke a ruling by the court, is
all that prevents this from being cause for a new trial.
Gross impropriety in the argument of cases seems to be
a widely prevalent evil in conducting trials both civil
and criminal.  It is one which ought speedily to disappear
entirely, and for the good of justice and the honor of
its administration by judicial tribunals we hope it will.

3. Touching the night session of the court, the facts
and circumstances are explained by the presiding judge,
and in the light of his explanation there was no error
either in holding that session or in the direction given
the next morning to the progress of the trial.

4. As against the accused there was certainly no error in any of the charges of the court complained of. The verdict was only for voluntary manslaughter. It was quite as favorable as any that could have been rendered under the evidence and the law applicable thereto. A new trial was properly refused.    *Judgment affirmed.*