24884. GREEN *v.* THE STATE.

DECIDED DECEMBER 19, 1935.

*Thomas A. Jacobs Jr.,* for plaintiff in error.
*Charles H. Garrett, solicitor-general,* contra.

MACINTYRE, J. Lee Green was indicted for murder and convicted of voluntary manslaughter. To the overruling of his motion for new trial he excepted.

1. The first special ground complains that the court should have declared a mistrial on the defendant's motion: first, on the ground that the judge allowed the solicitor general to make a supplemental statement to the jury of what he expected to prove after he had made his opening statement and the defendant's counsel had made his statement as to what he expected to prove; second, because of certain alleged improper and prejudicial statements made by the solicitor general in his supplemental opening statement. The court did not abuse its discretion in allowing the solicitor general to make a supplemental opening statement. The following explanatory note was made by the judge in reference to the remarks of the solicitor general: "The judge stated to the solicitor general and the jury that the remarks were highly improper and instructed the jury to disregard the words used and not to let the defendant's case be in any way prejudiced or harmed by what the solicitor general had said," and when all of the other circumstances, including the reprimand of the solicitor general by the court, are considered, we do not think the court erred in refusing to declare a mistrial. *Corbitt* v. *State*, 7 *Ga. App.* 13 (4) (66 S. E. 152); *York* v. *State*, 42 *Ga. App.* 453 (8), (15) (156 S. E. 733); *Walker* v. *State*, 124 *Ga.* 97 (5) (52 S. E. 319).

2. The second special ground excepts to the following charge: "The reasonable doubt of the law is a doubt that legitimately springs from the evidence, or from the lack of evidence adduced upon the trial, and leaves a reasonable mind wavering and unsettled—not satisfied from the evidence," on the ground that it was error because a reasonable doubt may arise from the statement of defendant which is not evidence and that it also may arise from uncertainty or unreliability or lack of evidence. This charge is not ground for a motion for new trial. *Barnard* v. *State*, 119 *Ga.* 436 (46 S. E. 644); *Dumas* v. *State*, 63 *Ga.* 601 (8); *Long* v. *State*, 38 *Ga.* 491 (8); *Malone* v. *State*, 49 *Ga.* 210 (8); *Walker* v. *State*, 118 *Ga.* 34 (44 S. E. 850); *Brantley* v. *State*, 133 Ga. 264 (5) (65 S. E. 426).

3. Special grounds 7 and 10 assign error on the following charge: "Now you take the law as given you in charge by the judge, and the facts as you get them from the witness stand, and apply the law to the facts and make up your verdict," in that it destroyed the force, weight and credit to be given the statement of the defendant and restricted the jury to the evidence given by witnesses and ignored and deprived the defendant of the benefit of his statement. These grounds are not meritorious. Having charged as to the weight which might be given the prisoner's statement it is not necessary in defining reasonable doubt for the judge further to say it might arise from the defendant's statement. Judge Bleckley has said in *Vaughn* v. *State*, 88 *Ga*. 731, 738 (16 S. E. 64), "The jury trying a criminal case are sworn to give a true verdict according to evidence. It is important for them not to confound the prisoner's statement with the evidence, or the evidence with the statement. The statute allows them to give the statement such force as they think proper and even to believe it in preference to the sworn testimony. In charging them, the court should keep the evidence distinct from the statement and shape the general tenor of the charge by the evidence alone, and the law applicable to it." The charges are in accord with the law as heretofore laid down in *Jordan* v. *State*, 130 *Ga*. 407 (5) (60 S. E. 1063). *Tucker* v. *State*, 133 *Ga*. 470 (5) (66 S. E. 250); *Walker* v. *State*, supra.

4. Grounds 3, 4, 5, 6 and 9, which complained that the court erred in charging on the defense of absolute and unconditional justification, will be discussed together. In *Hill* v. *State*, 64 *Ga*. 453, 468, it was said: "Defendant insists that the court should have turned the jury loose upon this section [Code of 1933, § 26-1016,] and should have instructed them that, 'where a man kills another for having criminal intercourse with his wife it is for the jury to decide whether the killing stands upon the same ground of reason and justice as those enumerated in the code, and if they so believe, it would be a case of justifiable homicide.' The judge declined to give this request but instructed the jury that 'there is no principle of reason or justice enumerated in the Code by which, after an injury shall have been consummated, no matter how great and no matter how grievous that injury may be, the party injured would be justified in taking vengeance into his

own hands and in deliberately seeking out the wrong doer and slaying him;' that 'the existence of such temptations, provocations or passions, might be looked to for ascertaining motives, or to inquire whether the killing was intentional or malicious, but would afford no justification for the killing if perpetrated for the mere purpose of vengeance, punishment, or vindication;' that 'one of the principles of reason and justice on which a homicide can be justified is this: that such homicide was committed as a defense against an injury, to prevent an injury of the serious kind described, or to stay its progress.'" Later on in the same opinion the court said: "Our law, in common with the laws of all civilized states with which we are acquainted, forbids vengeance for the past, but permits defense against the present and the immediate and pressing future; and therefore the presiding judge did not err in the refusal of the request to charge, or in the charge given on this point." The court in the *Hill* case, supra, stated that where the question under consideration was not the reduction of the crime from murder to manslaughter but the absolute and unconditional justification of the killing, it was not erroneous to charge in effect that in order to justify the killing, the defendant must have killed the deceased to prevent him from attempting or consummating an impending adultery with his wife, and not to avenge a past adultery with her.

The defendant relies strongly on *Biggs* v. *State,* 29 *Ga.* 723 (3) (76 Am. D. 630), and *Miller* v. *State,* 9 *Ga. App.* 599 (71 S. E. 1021). In the *Biggs* case it was held: "If a man takes the life of another who attempts the seduction of his wife, under circumstances of gross and direct aggravation, it is for the jury to find whether the case stands upon the same footing of reason and justice, as other instances of justifiable homicide enumerated in the Penal Code." The *Hill* case, supra, in distinguishing the *Biggs* case, said: "The Augusta case [*Biggs* v. *State,* supra,] of shooting at another, in our own reports, is wholly unlike this. There no breath of suspicion soiled the purity of the wife. The very evening before, the affront was given; and the insulter, the very next morning at breakfast, had the audacity to take his seat at the same table and immediately in front of the insulted woman and the guardian of her virtue; and it was in that case that this court ruled that the jury might consider whether it stood on the same

ground of reason as the cases enumerated in the Code. The wife was not only pure, but present; passion, just kindled the night before, flamed up beyond control at the sight of the aggressor, who was not hunted down to be slain, but who obtruded his presence before those he had wronged." And in the *Miller* case, supra, the court said: "According to testimony in this case, the deceased had passed the defendant's house in his buggy earlier in the morning. It is easily inferable that he knew that this young girl would go to the commencement at Helena, and he knew the road she would have to travel, and that she would have to pass the point where he stopped his buggy. He perhaps did not know that the father would be accompanying his daughter, for this was unusual. He had been accustomed to meet her there alone. His presence at that particular time and place at least indicated an intention on his part to repeat the illicit act. The numerous notes which passed between the parties, and which are to be found in the record, give evidence that the defendant's daughter was completely under the influence of the young man, and that he was determined to continue his relations with her at any cost, even to the length of taking her father's life if the father detected the criminal intercourse." Thus it will be seen that in the *Biggs* case and the *Miller* case the deceased obtruded his presence before those he had wronged, and the killing was done under circumstances of direct and gross aggravation, and in neither case was the deceased hunted down and slain.

Thus if there was actual danger, or if it reasonably appeared there was danger, of the deceased committing a future act of adultery with the defendant's daughter, and if such actual or reasonably apparent danger was of such a pressing nature as to demand immediate attention in order to prevent it, the danger would be impending, and if there was an impending danger which, either actually or as it reasonably appeared to defendant, could not be otherwise prevented than by the death of the assailant, the killing would be justifiable. "It has never been held, so far as our investigation has extended, that either a wife or a husband can lawfully kill a known paramour of his or her [minor daughter's] mate upon the idea of preventing an irreparable wrong;" *Coart* v. *State,* 156 *Ga.* 536, 557 (119 S. E. 723), and in the application of section 26-1016 of the Code of 1933, the killing must be

done to prevent "an impending wrong." "The controlling central essential of self-defense is protecting against an impending danger which either actually, or as it reasonably appears to the slayer, can not be otherwise prevented than by the death of the assailant." *Coart* v. *State,* supra. However, "a husband is not justifiable in killing a man whom he knows or believes to be his wife's [or daughter's] paramour when the latter is peaceably working at his daily labor in the field and the wife is at her home more than a mile distant. Under these circumstances there is no such urgent and pressing danger of a new act of adultery as to make the killing absolutely necessary in order to prevent it. It is only where there is such absolute necessity that a killing perpetrated to prevent adultery with the slayer's wife is upon the same footing of reason and justice with cases of justifiable homicide expressly enumerated in the Code. The doctrine of reasonable fear as a defense does not apply to any case of homicide where the danger apprehended is not urgent and pressing, or apparently so, at the time of the killing." *Jackson* v. *State,* 91 *Ga.* 271 (18 S. E. 298, 44 Am. St. R. 22). The law of the case on the controlling questions involved in the charges last referred to is as stated above. The court did not err, for any reason assigned, in giving these excerpts.

5. Error is assigned on the following charge: "If you fail to find the defendant guilty of anything, the form of your verdict will be 'We, the jury, find the defendant not guilty'" on the ground that the expression "if you fail to find the defendant guilty of anything" used by the court "was calculated to convey to the jury that the court thought the defendant guilty and he could be acquitted only in the event the jury failed to perform their duty, the use of the word 'fail' being calculated to convey to the jury the idea that the court thought they would fail to perform their duty if they acquitted." We do not think this charge is ground for new trial. However, we are of the opinion that some such form as "if you find the defendant not guilty, the form of your verdict will be 'we, the jury, find the defendant not guilty'" would have been less likely to be misinterpreted by the jury.

6. Grounds 11, 12, 13, 14, 16 and 17 complain of the refusal of certain requests to charge which relate to the right of the

defendant to kill the deceased to prevent future acts of intercourse between the deceased and the minor daughter of the defendant. Under the law of the case as stated above, the charge on this subject of justification was fully and fairly presented in the general charge, and the judgment will not be reversed because the judge refused to give the requests.

The request complained of in ground 15 was argumentative, and for this reason alone was properly refused.

7. "The law of voluntary manslaughter may properly be given in charge to the jury on the trial of one indicted for murder, where, from the evidence or from the defendant's statement at the trial, there is anything deducible which would tend to show that he was guilty of voluntary manslaughter, or which would be sufficient to raise a doubt as to which of these grades of homicide was committed." *Reeves* v. *State,* 22 *Ga. App.* 628 (97 S. E. 115). Applying this rule of law to the evidence and the defendant's statement, we do not think the judge erred in charging on the law of voluntary manslaughter. *McPhearson* v. *State,* 19 *Ga. App.* 232, 233 (91 S. E. 336); *Williams* v. *State,* 130 *Ga.* 400; *Mize* v. *State,* 135 *Ga.* 291, 298 (69 S. E. 173).

The evidence authorized the verdict, no error of law is shown, and the court did not err in overruling the motion for a new trial.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*