## ROZIER v. THE STATE.

No. 12014. JANUARY 11, 1938.

*W. A. Dampier*, for plaintiff in error.

*M. J. Yeomans*, attorney-general, *John S. Gibson*, solicitor-general, *O. H. Dukes, A. B. Spence, Ellis G. Arnall*, and *E. J. Clower*, contra.

JENKINS, Justice. The defendant was indicted and found guilty, without recommendation, of the rape of a seven-year-old girl. It was admitted in open court by the defendant and his counsel that the act charged had been committed on the child by "a male human being." She identified the defendant as the person who persuaded her to enter his truck when she left her home at night to look for "little brother;" and testified that he committed the offense out of the city, and had also beaten her. Dr. Seaman testified that, after an examination of the defendant at the request of the court, he thought him of "low development" and a "sexual pervert, . . a type of individual that gets sexual satisfaction other than through normal channels. . . This man is the type that gets sexual satisfaction out of infliction of pain on other individuals, and is known as the sadist type of sexual pervert. . .

Their desire, particularly the type of sadism, is very strong — that desire is an instinctive emotion. They get emotionally unstable at that time — emotional unstability. . . I should think that a pervert suffering as I have found this one, if he should decide in his mind to pick up a child here in this town, and have that kind of connection with it, from the time he picked that child up till he reached the spot where he could do it he could stop if he didn't give himself away to self-gratification. In examining this man, in my opinion I found him to be sane, and in my opinion he knows right from wrong. He just hasn't developed his mind to the point that usual, normal individuals develop their mind. I think it was developed to the degree that he knows right from wrong." In answer to a hypothetical question, stating the facts as to the commission of this offense, and the subsequent return of the victim to a place near her home, and his effort to escape, the witness said, "I would think he knew he had done wrong, and I think the knowledge that he had done wrong would cause him to escape." Dr. Walker testified that by order of the judge he had examined the defendant, and that the man was "in a rather hysterical, apathetic state, feigning loss of memory." Answering hypothetical questions, he said that such a man, approximately thirty-eight years old, committing an offense such as stated, "is a sexual pervert;" that "in persons who are sexual perverts, where abnormal and intense sexual excitement is manifested periodically, these are instances of a true neurosis or of periodic insanity;" that "when this man's sexual desire is on him, he is not sane;" and that "he was feigning loss of memory or insanity when I examined him. If I have to narrow it down to whether he is sane or insane, I would say he was sane, but of a low grade of intelligence." Also, that if the defendant did what was stated, "I would say that increased intensity of sexual desire was so strong with him, it couldn't be overcome by his mentality—he couldn't resist it," and he is "lacking in judgment;" and that while "I don't think that every man who rapes a woman should be considered incompetent and excused," and "wouldn't be crazy . . if he raped a child, he is a pervert," and "I think that every man who rapes a child is insane at the time." Dr. Davis, in answer to hypothetical questions, testified that a person who committed what was alleged to have been done by the defendant "would be called a sexual pervert,

a very degraded sort;" that such a person "may under ordinary, normal conditions have sufficient mentality to distinguish between right and wrong, but when seized with the intense, abnormal sexual desire, he would entirely lack the necessary mentality to control or resist such desires;" that about two months before the offense he treated the defendant as a patient for what seemed to have been epididymitis, inflammation of the cords that run into the testicle, caused from venereal infection or overuse of his sexual organ, "didn't notice that he was crazy then," and "didn't notice anything wrong with his mind at that time, but he could have been normal at that moment, and then not in an hour's time; . . a man would be a pervert if he did the things related . . a sexual pervert . . he has almost got to have a slight form of neurosis before he is a sexual pervert—not necessarily insane, but temporarily insane;" that a man "is not sane then if he is under this particular obsession—in other words, the obsession to go out and rape a little girl—he is not sane then;" that "my theory is the fact that a man who was normal wouldn't commit that kind of crime; the enormity of the crime is why I say that;" and "I think the defendant was temporarily insane whenever he committed that crime, if he did it." A deputy sheriff testified that the defendant told him that on the day of the crime the defendant "was drinking, and if he did anything, he didn't know it;" that "he wouldn't say that he didn't take that girl out, but if he did, he didn't remember it;" that "he knew what we were talking about when he said he wouldn't say he didn't do it, but if he did, he didn't remember it because he was drinking." Another deputy testified that the defendant knew him as a deputy sheriff; and when the witness, about two months after the offense, stopped his car about 300 or 350 feet away from where the defendant was plowing, planting cotton, and got over the fence and started down to him, the defendant stopped his mule and went to the swamp, and they could not find him anywhere until, after watching his house and searching branches and swamps, they caught him with a posse fifteen days later. The motion for new trial is limited to the general grounds. No question except as to insanity is argued in the briefs.

1. On the defense of insanity at the time of the criminal act, there being a presumption of sanity, the burden is upon the accused to show by a preponderance of evidence, but not beyond

a reasonable doubt, that at such time he was mentally irresponsible, under the tests recognized in this State. *Carter* v. *State,* 56 *Ga.* 463, 467; *Allams* v. *State,* 123 *Ga.* 500 (51 S. E. 506), and cit.; *Polk* v. *State,* 148 *Ga.* 34 (5), 38 (95 S. E. 988) ; *Currie* v. *State,* 153 *Ga.* 178 (2), 180 (111 S. E. 727).

2. The test of criminal responsibility in this State is that "if a man has reason sufficient to distinguish between right and wrong in relation to a particular act about to be committed, he is criminally responsible;" and there has been but one recognized exception, which is that although "a man has reason sufficient to distinguish between right and wrong, . . yet [if] in consequence of some delusion the will is overmastered and there is no criminal intent," he is not responsible, "provided that the act itself is connected with the peculiar delusion under which the prisoner is laboring." *Roberts* v. *State,* 3 *Ga.* 310; *Taylor* v. *State,* 105 *Ga.* 746 (31 S. E. 761) ; *Hinson* v. *State,* 152 *Ga.* 243 (3) (109 S. E. 661) ; *Hargroves* v. *State,* 179 *Ga.* 722 (3) (177 S. E. 561) ; Code, § 26-301. In this and most of the States, no cognizance is taken of what has been termed "impulsive" or "emotional" insanity, where a criminal act is done under some overwhelming and irresistible impulse, unless it be that such impulse is the result of a mental disease or mental defect, overriding reason and judgment and obliterating the sense of right and wrong, so as to fall within the generally accepted "right and wrong test," or the exception, above referred to, of "delusional insanity." See *Brinkley* v. *State,* 58 *Ga.* 296 (4), 300; 16 C. J. 100-103; 32 C. J. 599-601.

Nor, under our Code and decisions, is any recognition taken of so-called "moral insanity," or of an irresponsibility "from an inability to control the will from the habit of indulgence." *Choice* v. *State,* 31 *Ga.* 424 (11). Nor does mere weak-mindedness, unless amounting to imbecility or idiocy, which like lunacy or insanity may be held to deprive the offender of the sense of right and wrong, and relieve him of responsibility. Code, §§ 26-301 to 26-304, inclusive; *Studstill* v. *State,* 7 *Ga.* 2 (6), 12.

3. Applying the foregoing rules to the instant case, although the evidence at the trial of this adult defendant for the rape of a seven-year-old girl showed that he was of low mental development and a sexual pervert, it not being shown that he was an idiot or an imbecile or insane to the extent of being unable to distinguish be-

tween right and wrong, or that he was laboring under some over-mastering insane delusion connected with and compelling the particular act, it can not be said as a matter of law that he was free of responsibility. The crime having been proved, and the identity of the defendant established without dispute, the verdict of guilty was authorized. *Judgment affirmed. All the Justices concur.*