BARKER *v.* THE STATE.

No. 12788. JUNE 16, 1939.

*H. A. Allen* and *E. L. Fowler,* for plaintiff in error.

*Ellis G. Arnall, attorney-general, Frank Simpson, solicitor-general, Emil J. Clower, Herschel E. Smith,* and *C. E. Gregory Jr., assistant attorneys-general,* contra.

REID, Chief Justice. ■ The general rule is that if a man has reason sufficient to distinguish between right and wrong in relation to a particular act about to be committed, he is criminally responsible. *Roberts* v. *State, 3 Ga.* 310; *Carr* v. *State, 96 Ga.* 284 (22 S. E. 570). While there is an exception to this rule, to the effect that although a man has reason sufficient to distinguish between right and wrong as to a particular act about to be committed, yet if, in consequence of some delusion brought about by mental disease, his will was overmastered so that there was no criminal intent with reference to the act in question, he will not be held as criminally responsible (*Roberts* v. *State,* supra; *Flanagan* v. *State, 103 Ga.* 619, 30 S. E. 550; *Taylor* v. *State, 105 Ga.* 746, 31 S. E. 764; *Allams* v. *State, 123 Ga.* 500, 51 S. E. 506; *Rozier* v. *State, 185 Ga.* 317, 195 S. E. 172), which is commonly referred to in the decisions as delusional insanity, yet in order for such defense to be available on a trial for murder, it must appear, not only that the defendant was actually laboring under a delusion (*Goosby* v. *State,* 153 *Ga.* 496, 112 S. E. 467), but "that the act itself is connected with the particular delusion under which the prisoner is laboring" (*Roberts* v. *State,* supra), and also that the delusion was as to a fact which, if true, would justify the act. *Mars* v. *State, 163 Ga.* 43 (135 S. E. 410) ; *McKinnon* v. *State, 51 Ga. App.* 549 (181 S. E. 91) ; *Choice* v. *State, 31 Ga.* 424, 478 ; *Hill* v. *State, 64 Ga.* 453 (3 *a*). In the present case the defendant was convicted of the murder of his wife. It appears from the evidence that he killed his wife by cutting her throat with a razor. The defendant made no statement, and the principal special grounds in the motion for new trial have to do with certain evidence which it is claimed disclosed delusional insanity sufficiently to authorize certain requests to charge the jury thereon. This evidence may be summarized as follows: Lorene Barker, thirteen years old, daughter of the defendant, testified generally that her mother was afraid to sleep with the defendant on the night before she was killed; and in answer to a question as to whether she had seen trouble between her mother and father before that time, she testified as follows: "Answer: Yes, sir, a lots. Question: You say you had seen them have trouble before then, Lorene? Answer: Yes, sir. Question: Do you recall when? Answer: Well, all the time. Question: What did that consist of, Lorene? Answer: Her being out with other men.

Question: That's what he would say? Answer: Yes, sir. Question: Well, was she? Answer: No, sir."

Eldridge Barker, brother of the defendant, testified in effect that the defendant appeared always to have something on his mind which worried him; that he continuously said that everybody was "messing him up."

In this connection it appears from the evidence that the defendant had sustained certain injuries in an automobile accident some time before the homicide, and Barker testified: "What I understood about that messing him up, well, he talked a good deal about his settlement with the company in Atlanta, the Triple A and his attorneys, etc.; and that was the word he gave me every time, that it seemed like his lawyer and everybody was messing him up." Ellis Barker, another brother of the defendant, testified that a month or so before the crime, he took the defendant home, and that "all he talked about on the way was he was going to the chaingang, and they had five or six bills against him here at Lawrenceville, and I asked him what it was for, and he couldn't give me no explanation. I asked him was he under bond, and he said no." This witness further testified, that the defendant remained at his house for several days, and that just before day the last morning he was there the defendant was sitting out on the porch, smoking, and "he come running in the house, and he said, . . Yonder he comes," and under the bed he went. I said, "Who is it?" He said, "The sheriff I guess." And that the people to whom the defendant was apparently referring was the witness's mother-in-law and her son.

The question presented is whether or not any of this evidence is sufficient to authorize certain requests to charge the jury on the issue of delusional insanity. Under the principles hereinbefore stated, we are of the opinion that it was not. Concerning the trouble which the defendant's daughter testified had existed between the defendant and his wife for some time, and the defendant's belief about "her being out with other men," while the child testified that this was not true, it can not be said that the defendant was laboring under any delusion upon the subject. Whether there were reasonable grounds for his belief does not appear from the record. However, conceding that, when taken in connection with other evidence concerning the defendant's mental condition, it was suffi-

ciently shown that the defendant was laboring under a delusion on this score, it certainly does not appear that the criminal act was in any way connected with this particular delusion; and, most important of all, had the delusion been true it would not have justified defendant taking the life of his wife. *Stevens* v. *State,* 137 *Ga.* 520 (73 S. E. 737).

It is apparent that the other evidence which we have set out above, concerning the defendant's belief that everybody "was messing him up," and more especially his attorneys and the Triple A in reference to a settlement made by him of injuries sustained in an automobile accident, and also his belief that warrants had been sworn out against him in Lawrenceville, and that the sheriff was after him, is subject to the same infirmities, in so far as the defense of delusional insanity be concerned, as that which we have noted in reference to the testimony given by the defendant's daughter. It follows that there was not sufficient evidence to authorize a charge by the judge on delusional insanity as a defense to the crime with which the defendant was charged, and therefore that he did not err in refusing to give such charge upon request.

■ It is contended that the evidence demanded a finding that the defendant was insane and therefore was not criminally responsible for the death of his wife. In every criminal case the presumption is that the defendant was sane at the time of the commission of the crime, and the burden of proof rests upon him to show to the contrary. He must show that, not beyond a reasonable doubt, but to the reasonable satisfaction of the jury, by a preponderance of the evidence. *Beck* v. *State,* 76 *Ga.* 452. See also *Keener* v. *State,* 97 *Ga.* 388 (24 S. E. 28); *Minder* v. *State,* 113 *Ga.* 772 (39 S. E. 284); *Lively* v. *State,* 178 *Ga.* 693, 699 (173 S. E. 636). There was evidence in the present case which, in our opinion, would have authorized the jury to acquit the defendant because of mental incapacity. However, it can by no means be said that the evidence demanded such a finding. The evidence as a whole clearly indicated that the defendant was not normal at all times, and that in many respects he was unbalanced. He did not at all times conduct himself as a man in possession of his full faculties. It is only our duty, however, to pass on the question whether or not the evidence showed that the defendant knew "right from wrong;" and regardless of what we may have thought as jurors of his criminal respon-

sibility, we are not at liberty as judges, under the evidence, to declare that the defendant did not realize that it was wrong to take the life of his wife. Much argument is made by counsel for the defendant, pointing to the brutality of the murder. It appears that the deceased was badly beaten in addition to the mortal wound inflicted upon her. It likewise appears that she was pregnant with child at the time of the homicide. We are perfectly willing to agree that the homicide was inconceivably brutal; but we are not prepared to say that the brutality of the murder, even when taken in connection with the other evidence touching the defendant's mental condition, indicated conclusively that he was insane. This was the jury's province.

The court charged the jury as follows: "The perpetrator may be insane in the loose and general sense, and yet be, in the eyes of the law, sane and responsible so far as the act in question is concerned." When taken in connection with the remainder of the charge concerning the applicable rules touching the defense of insanity, this charge was not error for any reason assigned. See *Roberts* v. *State*, supra. The evidence supported the verdict, and the court did not err in overruling the motion for new trial.

*Judgment affirmed. All the Justices concur.*