20923.   MULLINS v. THE STATE.

SUBMITTED JUNE 13, 1960—DECIDED JULY 7, 1960.

184

186

*William P. Holley*, for plaintiff in error.

*Sam. P. Burtz, Solicitor-General, Butt & Spence, Robert K. Ballew, Eugene Cook, Attorney-General, Rubye G. Jackson, Assistant Attorney-General*, contra.

QUILLIAN, Justice. ■ The only general ground of the motion for new trial insisted on is that the verdict was without evidence to support it.

It is the position of the defendant that the evidence demanded a verdict of acquittal, because the deceased was attempting to arrest him unlawfully and hence he had a right to defend himself against such arrest. The point is not well taken. The evidence showed without conflict that the deceased, an officer of the law, was performing his duty in arresting the defendant, a fugitive felon who was in the very act of escaping, and that his arrest was necessary in order to prevent a failure of justice. The arrest made without a warrant was lawful under the provision of Code § 27-207.

The defendant further insists that the evidence did not sup-

port the verdict because the evidence warranted no verdict except that of not guilty by reason of insanity.

The general rule as to the question of sanity relative to criminal responsibility in the State is: "If a man has reason sufficient to distinguish between right and wrong in relation to a particular act about to be committed, he is criminally responsible." *Roberts v. State,* 3 Ga. 310 (3), 327.

There is, however, a recognized exception to the general rule as found in the pronouncement of this court in *Rozier v. State,* 185 Ga. 317, 320 (195 S. E. 172): "The test of criminal responsibility in this State is that 'if a man has reason sufficient to distinguish between right and wrong in relation to a particular act about to be committed, he is criminally responsible;' and there has been but one recognized exception, which is that although 'a man has reason sufficient to distinguish between right and wrong . . . yet (if) in consequence of some delusion the will is overmastered and there is no criminal intent,' he is not responsible, 'provided that the act itself is connected with the peculiar delusion under which the prisoner is laboring.' *Roberts v. State,* 3 Ga. 310; *Taylor v. State,* 105 Ga. 746 (31 S. E. 761); *Hinson v. State,* 152 Ga. 243 (3) (109 S. E. 661); *Hargroves v. State,* 179 Ga. 722 (3) (177 S. E. 561); Code § 26-301." That the defendant be impressed with delusions or hallucinations is not enough; his criminal act must stem from such mental disorder, or else his accountability for the criminal act is measured by the general test of whether he could at the time of the crime's commission distinguish between right and wrong. "While there is an exception to this rule, to the effect that although a man has reason sufficient to distinguish beteween right and wrong as to a particular act about to be committed, yet if, in consequence of some delusion brought about by mental disease, his will was overmastered so that there was no criminal intent with reference to the act in question, he will not be held as criminally responsible (*Roberts v. State* [3 Ga. 310], supra; *Flanagan v. State,* 103 Ga. 619, 30 S. E. 550; *Taylor v. State,* 105 Ga. 746, 31 S. E. 764; *Allams v. State,* 123 Ga. 500, 51 S. E. 506; *Rozier v. State,* 185 Ga. 317, 195 S. E. 172), which is commonly referred to in the de-

cisions as delusional insanity, yet in order for such defense to be available on a trial for murder, it must appear, not only that the defendant was actually laboring under a delusion (*Goosby v. State*, 153 Ga. 496, 112 S. E. 467), but 'that the act itself is connected with the particular delusion under which the prisoner is laboring' (*Roberts v. State*, supra) and also that the delusion was as to a fact which, if true, would justify the act. *Mars v. State*, 163 Ga. 43 (135 S. E. 410); *McKinnon v. State*, 51 Ga. App. 549 (181 S. E. 91); *Choice v. State*, 31 Ga. 424, 478; Hill v. State, 64 Ga. 453 (3a)." *Barker v. State*, 188 Ga. 332, 333 (4 S. E. 2d 31).

Two psychiatrists, the only witnesses who testified concerning the defendant's ability to discern right from wrong, were agreed that he was, on the occasion of the homicide, aware that he was committing a wrongful act. The testimony was in conflict as to whether the defendant's mental processes were affected by delusions on the morning he killed the officer. However, neither of the witnesses testified that the killing was caused by or connected with a delusion and neither gave evidence from which that conclusion must necessarily be inferred. The defendant himself, in an interview with one of the State's witnesses, gave an account of the homicide. He stated, according to the witness's undisputed testimony, that he was aware that it was wrong for him to kill the deceased, and "the reason I killed him I thought he would kill me if I didn't kill him." The defendant was, at the moment he fired on the deceased, aware that he was an officer of the law in the act of apprehending him; that he had since early that morning committed two robberies, the offense of kidnapping and what he then believed to be the murder of Mr. Biddy by the roadside. He probably and correctly surmised that the officer had been informed of these crimes. He knew that probably the only way to escape punishment for these heinous felonies was to resist arrest, and that in such circumstances either he or the officer was likely to be killed.

The admissions of the defendant removed all doubt that he knew that he was committing a wrong in killing the policeman, and that he acted, not as a result of a delusion, but upon a rational premediated design in committing the homicide.

There is no merit in this insistence that the verdict is not supported by the evidence.·

■ Grounds 4 and 5 of the amended motion for new trial complain of the court's failure to charge the jury on the principles of law applicable to justifiable homicide and voluntary manslaughter. The case of *Mullis v. State,* 196 Ga. 569 (27 S. E. 2d 91) was cited as authority for this proposition. In that case the evidence made an issue of fact as to whether an officer was unlawfully arresting the defendant. In the instant case the evidence is conclusive that the arrest was legal, and that the deceased did nothing to indicate that he intended or was endeavoring to do the defendant bodily harm.

■ The 6th ground of the amended motion for new trial was abandoned.

■ The 7th ground of the amended motion complained that the court erred in charging the jury: "Then the form of that verdict would be—We, the jury, find the defendant not guilty because of insanity and lack of criminal responsibility, and in that event the court would commit him to the State Hospital in Milledgeville and he would remain there until discharged by law under the rules of the hospital."

The criticism of this charge is that it was incorrect as an abstract principle of law, was confusing and led the jury to believe that patients were discharged from the Milledgeville State Hospital under the rules of the institution and not in the manner prescribed by the Georgia Code of 1933.

The charge, substantially in the language of Code § 35-202 relating to the manner in which patients are discharged from the Milledgeville State Hospital, was a correct statement of the law and was not confusing. The fact that the Code section has been amended since the trial is of no consequence in deciding that the charge was a correct statement of the law as it then existed.

*Judgment affirmed. All the Justices concur.*