26731.   BROWN v. THE STATE.

ARGUED SEPTEMBER 16, 1971—DECIDED OCTOBER 7, 1971—
REHEARING DENIED OCTOBER 21, 1971.

216

*G. Wesley Channell,* for appellant.

*Ben F. Smith, District Attorney, George W. Darden, Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Courtney Wilder Stanton, David L. G. King, Jr., Assistant Attorneys General,* for appellee.

NICHOLS, Justice. ■ The defendant was charged with a capital felony and it was not error, as contended in the first two enumerations of error to qualify the jury as to capital punishment and to permit the State to strike for cause those jurors opposed to capital punishment even though the district attorney had stated that the State would not insist upon the death penalty.

■ As to the question of "insanity" and "delusional insanity" it was said in *Johnson v. State,* 226 Ga. 511, 515 (175 SE2d 840), quoting from *Barker v. State,* 188 Ga. 332, 333 (4 SE2d 31): " 'The general rule is that if a man has reason sufficient to distinguish between right and wrong in relation to a particular act about to be committed, he is criminally responsible. *Roberts v. State,* 3 Ga. 310; *Carr v. State,* 96 Ga. 284 (22 SE 570). While there is an exception to this rule, to the effect that although a man has reason sufficient to distinguish between right and wrong as to a particular act about to be committed, yet if, in consequence of some delusion brought about by mental disease, his will was overmastered so that there was no criminal intent with reference to the act in question, he will not be held as criminally responsible *(Roberts v. State,* supra; *Flanagan v. State,* 103 Ga. 619 (30 SE 550); *Taylor v. State,* 105 Ga. 746 (31 SE 764); *Allams v. State,* 123 Ga. 500 (51 SE 506); *Rozier v. State,* 185 Ga. 317 (195 SE 172)), which is commonly referred to in the decisions as delusional insanity, yet in order for such defense to be available on a trial for murder, it must appear, not only that the defendant was actually laboring under a delusion *(Goosby v. State,* 153 Ga. 496 (112 SE 467)), but 'that the act itself is connected with the particular delusion under which the prisoner is laboring' *(Roberts v. State,* supra), and also that the delusion was as

218

to a fact which, if true, would justify the act. *Mars v. State,* 163 Ga. 43 (135 SE 410); *McKinnon v. State,* 51 Ga. App. 549 (181 SE 91); *Choice v. State,* 31 Ga. 424, 478; *Hill v. State,* 64 Ga. 453 (3a).' See also *Mullins v. State,* 216 Ga. 183, 187 (115 SE2d 547)."

Thus, the question is presented as to whether the delusion under which the defendant contends she was suffering, would, if true, have justified the act.

While it has been held numerous times that a homicide is justifiable where done to prevent the commission or completion of the adulterous act (see *O'Shields v. State,* 125 Ga. 310 (54 SE 120) and citations), yet "On the other hand, if the killing, although apparently necessary to prevent adultery, was actually done by the defendant under a violent and sudden impulse of passion engendered by the circumstances and not to prevent the adultery, the offense is that of manslaughter. *Mays v. State,* 88 Ga. 399 (14 SE 560); *Patterson v. State,* 134 Ga. 264 (67 SE 816)," *Scroggs v. State,* 94 Ga. App. 28, 30 (93 SE2d 583), and further a killing to revenge a past sexual wrong committed upon a spouse cannot be deemed justifiable (see *Ellison v. State,* 137 Ga. 193 (4) (73 SE 255)).

In *Miller v. State,* 9 Ga. App. 599, 605 (71 SE 1021), it was said: "But, though a killing for a wrong which has been completed can not be justified, no matter how heinous the wrong, it is still justifiable to prevent certain wrongs which may be prevented, even if it cost human life to prevent their infliction. One may shoot and kill a burglar to prevent the burglar from entering his house; it is for the jury to say whether a father endowed with the right to protect his daughter has not an equal right to prevent her continued defilement and disgrace. The principle underlying both instances is the same. The only question which could arise is, Which is the more valuable, the preservation of the chattels within the house, or the protection of its inmates?"

The holdings in the *Miller* case, supra, as well as in the *Scroggs* case, supra, graphically point out the distinction

between a situation where the killing was done for revenge and where done to prevent further acts of sexual misconduct upon the spouse or daughter of the defendant. The gist of such holdings is that where a continuing adulterous affair exists, as opposed to mere past acts of misconduct, if a jury believes the killing was done to prevent future misconduct, an acquittal is authorized. See also *Richardson v. State,* 70 Ga. 825 (2), the justification being authorized by *Code Ann.* § 26-901 (f). See *Daniels v. State,* 162 Ga. 366 (4a) (133 SE 866), and citations, dealing with cases where the deceased is killed as a result of being caught in the act.

The evidence authorized a finding that the deceased and the defendant's husband had been engaged in a continuing adulterous affair which, except for a six-month interruption when the defendant and her husband lived in another town, had been going on for approximately two and one-half years, that although the defendant's husband professed that such affair had been terminated he admitted that his conduct had not changed and that he had continued to drink and stay out at night.

Under the above facts and the decisions exemplified by *Johnson v. State,* supra, a charge on delusional insanity was authorized and the requested charge which included a statement to the effect that a person may be suffering from delusional insanity even though he can distinguish between right and wrong was erroneously rejected by the trial court. See also *Allams v. State,* 123 Ga. 500 (3) (51 SE 506); and *Flanagan v. State,* 103 Ga. 619 (30 SE 550). At no time did the trial court distinguish between insanity where knowledge between right and wrong does not exist and delusional insanity where such knowledge may exist.

■ The defendant requested the court to instruct the jury: "The act itself may be so utterly senseless and abnormal as to furnish satisfactory proof of a diseased mind." The request was refused and such refusal is the basis of the 4th enumeration of error.

In *Ross v. State,* 217 Ga. 569, 578 (124 SE2d 280), with two dissents upon other grounds, it was held that a defend-

ant's actions could be construed as those of a sane and cunning man and not an insane one. Such decision cited *Wilson v. State,* 9 Ga. App. 274 (70 SE 1128), where it was held that the defendant's actions were such that "no sober, sane man in the possession of his normal faculties would have done what this man did, in the circumstances under which he did it, and in the manner in which he did it."

The requested charge stated a correct principle of law. The evidence adduced that the homicide was committed in full view of 50 to 75 persons, after the defendant had been in the store for several hours, with no attempt to conceal either her identity or the homicide, and without any attempt to escape, authorized such charge and the refusal to give such requested charge was error.

■ The refusal to give the requested charge complained of in the 5th enumeration of error, which request was for all practical purposes a quotation of the charge held proper in *Hargroves v. State,* 179 Ga. 722 (3) (177 SE 561), was error.

■ Where, as here, the evidence adduced by the State proved a prima facie case of murder and the jury was not required as a matter of law to accept the evidence presented by the defendant either as to justification, insanity or delusion insanity it cannot be said that the verdict was not authorized by the evidence and the 6th enumeration of error complaining that the verdict was not supported by the evidence shows no reversible error.

For the reasons dealt with in Divisions 2, 3 and 4 of this opinion the conviction must be reversed and a new trial granted.

*Judgment reversed. All the Justices concur, except Grice, Undercofler and Felton, JJ., who dissent. Mobley, P. J., concurs specially.*

MOBLEY, Presiding Justice, concurring specially. I concur in the judgment as I agree with the ruling in Division 3 of the opinion that the court erred in refusing to give the request to instruct the jury that: "The act itself may be so utterly senseless and abnormal as to furnish satisfactory proof of a diseased mind." The conduct of this woman was

so senseless and abnormal as would justify the conclusion that her mind was, at the time, diseased.

FELTON, Justice, dissenting. I dissent from the majority opinion, which grants a new trial in part because of the trial court's refusal to charge on delusional insanity. A charge on delusional insanity was not authorized in the present case for two reasons: In the first place, the defendant testified that she shot the decedent *accidentally, not* because of a "continuing adulterous affair" (which existed either in fact or merely in the defendant's mind). Hence, under her own testimony, it does not appear that she was laboring under a delusion (*Goosby v. State,* 153 Ga. 496 (112 SE 467) or, if she was, that the act itself was connected with the particular delusion under which she was laboring (*Roberts v. State,* 3 Ga. 310).

In the second place, as pointed out by the majority, in order for this defense to be available on a trial for murder, it must also appear "that the delusion was as to a fact which, if true, *would justify the act.* [Cases cited]." (Emphasis supplied). The majority opinion cites two Court of Appeals cases (*Scroggs* and *Miller*), then states that "[t]he gist of such holdings is that where a continuing adulterous affair exists, as opposed to mere past acts of misconduct, if a jury believes the killing was done to prevent *future* misconduct, an acquittal is authorized." (Emphasis supplied). While this is technically a correct statement, as far as it goes, of the holdings on the subject, it is, nevertheless, a generalization which overlooks a crucial distinction and limitation recognized and imposed by the courts of this State, i.e., that the danger of any "future" adulterous act must be *impending, imminent, immediate, urgent* and *pressing* at the time of the killing for such killing to be justified. For some examples of the numerous cases holding to this effect see: *Hill v. State,* 64 Ga. 453, 466 (2); *Cloud v. State,* 81 Ga. 444 (7 SE 641); *Mays v. State,* 88 Ga. 399, 402 (14 SE 560); *Jackson v. State,* 91 Ga. 271 (1) (18 SE 298, 44 ASR 22); *Coart v. State,* 156 Ga. 536 (5) (119 SE 723); *Broyles v. State,* 25 Ga. App. 17 (102 SE 381); *Green v.*

State, 52 Ga. App. 290 (4) (183 SE 204). Although the Court of Appeals, in *Scroggs v. State,* utilized the broad language "to prevent a planned act of sexual intercourse," citing the *Miller* case, 9 Ga. App. 599, supra, this case was later distinguished by that court in *Ogden v. State,* 96 Ga. App. 508 (100 SE2d 588) and *Lewis v. State,* 109 Ga. App. 152, 153 (135 SE2d 492), so as to be aligned with the law as hereinabove set forth. Furthermore, it is not at all apparent that the *Miller* case is contrary to this principle, inasmuch as there was ample evidence in that case that the decedent had stated and evidenced to the defendant his intention of continuing his debauchery of defendant's daughter, threatening defendant's life if he interfered. This court, in *Farmer v. State,* 91 Ga. 720 (18 SE 987), approved the following instruction: "[W]here the defendant justifies the killing upon the ground that the deceased had attempted to debauch his wife, the doctrine that the danger must be imminent at the time of the killing does not apply. . ." To the extent that this case may not adhere to the law as established by both older and subsequent decisions, it should not be followed.

This court, in *Jackson v. State,* 91 Ga. 271 (1), supra, aptly expressed this principle in a case similar to the one at bar, to wit: "A husband is not justifiable in killing a man who he knows or believes to be his wife's paramour when the latter is peaceably working at his daily labor in the field and the wife is at her home more than a mile distant. Under these circumstances there is no such urgent and pressing danger of a new act of adultery as to make the killing absolutely necessary in order to prevent it. It is only where there is such absolute necessity that a killing perpetrated to prevent adultery with the slayer's wife is upon the same footing of reason and justice with cases of justifiable homicide expressly enumerated in the Code. The doctrine of reasonable fear as a defense does not apply to any case of homicide where the danger apprehended is not urgent and pressing, or apparently so, at the time of the killing." In the case at bar there was no evidence of "such urgent and pressing danger of a new act of adultery as to make the killing absolutely necessary in order to prevent it." There

was no error in the court's refusal to give the requested charges.

I am authorized to state that Justice Grice and Justice Undercofler concur in this dissent.