### A11A1734. McBRIDE v. THE STATE.

(725 SE2d 844)

BARNES, Presiding Judge.

A jury convicted Earl Darrisaw McBride of aggravated assault, aggravated battery, simple battery, obstruction of an emergency telephone call, and three counts of obstruction of an officer. The trial court sentenced him to 35 years, 20 to be served in confinement. McBride contends on appeal that the trial court erred in failing to charge the jury that it could find him not guilty by reason of insanity, and in declining McBride's request for a mistrial based on his failure to cooperate with his counsel. For the reasons that follow, we affirm.

The evidence showed that McBride lived with his mother and

had been admitted to Central State Hospital numerous times. In September 2008, his mother was in the kitchen about to cook breakfast when McBride assaulted her. He poured dishwater over her head, pushed her into the table, knocked her down, hit her with his cane, and pulled the phone cord from the wall so she could not call for help. McBride left the house, and his mother called 911 from a neighbor's house. While two police officers were talking to the mother in her kitchen, McBride returned and walked "straight back to his bedroom and locked the door."

The first officer on the scene asked McBride to come out and talk to him, but he refused to open the door. McBride's mother wanted McBride removed from her house, so the officer kicked the door open about a foot. McBride came to the door but instead of coming out, he stabbed the officer in the abdomen with a knife. The officer felt his stomach get "real, real hot" and noticed he was bleeding, but managed to kick the door open again briefly and fire his taser. The shots hit the door, which McBride had managed to close again, and other officers took over. They pushed the door partly open again, but McBride hit them with a fan and closed it. Finally, the officers kicked the door fully open and found McBride sitting in a chair. He refused to show his hands, but the officers subdued him and took him into custody, and he was placed in jail.

In February 2009, McBride gave notice of his intent to raise the issue of insanity in his defense, and in March 2009 the trial court ordered him to be evaluated regarding his competency to stand trial at the time of the acts. A forensic psychiatrist at Central State Hospital examined McBride and concluded that he was actively psychotic and not competent to stand trial at that time, although the doctor was unable to assess McBride's mental health at the time of the crimes. McBride entered a plea of mentally incompetent to stand trial and sought a jury determination of his competence. In September 2009, a jury found McBride incompetent to stand trial, and the trial court committed him to the custody of the Department of Human Resources ("DHR"), and he was admitted to Central State.

In January 2010, a forensic psychologist at Central State re-evaluated McBride. The examiner was still unable to assess McBride's criminal responsibility at the time of the crimes because he would not cooperate. The examiner noted that McBride had been taking antipsychotic medication, and hospital staff had reported that McBride was able to advocate for his preferences and needs and demonstrated organized actions and comments. After reviewing his course of treatment and behavior during his commitment, the examiner concluded that McBride's "complete refusal to participate in evaluations points to a deliberate attempt on the part of Mr. McBride to manipulate both the court system and the mental health

system to avoid going to trial on his very serious charges." The examiner concluded that McBride was capable of assisting his attorney in providing a proper defense "if he so chooses," and recommended that McBride "be returned to jail as soon as possible to await trial."

In February 2010, while acknowledging he had refused to cooperate with the examiner, McBride renewed his motion for an evaluation of his degree of criminal responsibility, observing that he was unable to plead not guilty by reason of insanity without such an evaluation. The trial court denied the motion, and the case went to trial in March 2010.

During the first day of trial, McBride was extremely argumentative with the trial court and accused his lawyers of being "in cahoots" with the State. During the State's opening statement, McBride accused the prosecutor of lying. The trial court sent the jury out and warned McBride that he would be removed from court if he persisted in making outbursts. When the jury returned and opening resumed, McBride again accused the prosecutor of lying and began cursing at him. The trial court had McBride removed from the courtroom. After the State finished its opening statement, the jury retired for the evening, and McBride was returned to the courtroom, where the trial court warned him that if he did not "behave and be quiet" during the proceedings the next day, he would be gagged or removed from court again.

The next morning, McBride's lawyer moved for a mistrial because of McBride's behavior the previous day. The lawyer noted that McBride refused to talk to him after trial and thus could not assist his attorney in preparing for trial. The trial court denied the motion, noting that the examiner had determined that McBride understood the proceeding and was able to cooperate but chose not to do so.

McBride's mother testified that she was afraid of McBride when he got into a rage, because she thought "he might do something to [her]." On cross-examination, when asked what she meant by "when Earl gets like that," she explained that as long as he was on his medication he was okay, but once he stopped taking it, "you can't hardly do anything with Earl." She knew he had previously been under a doctor's care, used to take Haldol and Seroquel, and had been admitted to Central State numerous times. She had called the police several times because he would "do crazy stuff." She wanted him to get medical help for the way he acted.

Several law enforcement personnel testified about the events that led to McBride's arrest. One testified that he had taken McBride to the hospital at Milledgeville at least twice, and that "any time you deal with Earl you've got to be a little apprehensive," because "he's

just Earl." Another officer testified that McBride appeared to be coherent and "in his right mind." A third officer testified that he had dealt with McBride 15 to 20 times before and "firmly" believed McBride "knew exactly what was going on" that day.

1. McBride asserts that the trial court erred in declining to charge the jury that he could be found not guilty by reason of insanity. OCGA § 16-3-2 provides that a person "shall not be found guilty of a crime if, at the time of the act, . . . the person did not have mental capacity to distinguish between right and wrong in relation to such act. . . ." OCGA § 17-7-131 (b) (1) provides that, when an insanity defense is interposed, the jury "shall find whether the defendant is: Guilty; Not guilty; Not guilty by reason of insanity at the time of the crime; Guilty but mentally ill . . .; or Guilty but mentally retarded. . . ." Further, an insanity defense "does not require expert testimony as a prerequisite for presentation to a jury," *Motes v. State*, 256 Ga. 831, 832 (2) (353 SE2d 348) (1987), and if "the issue of insanity at the time of the commission of an alleged offense is made by the evidence, it is mandatory for the trial judge to charge the provisions of [OCGA § 17-7-131 (b) (1) (C)]." *Morgan v. State*, 224 Ga. 604, 605 (2) (163 SE2d 690) (1968).

In this case, however, McBride introduced no evidence of insanity, only lay witness testimony about generalized problems. Because he would not cooperate with the expert psychiatrist appointed by the court, McBride was not entitled to introduce his own expert, because "if a defendant wants to tell his story to a jury through the mouth of an expert, the [S]tate should have an equal opportunity to tell that story through the mouth of an expert." *Motes*, 256 Ga. at 832 (2). Further, while a defendant is not required to introduce expert testimony before a jury can consider his insanity defense, no testimony indicated that McBride did not know the difference between right and wrong when he committed the acts. "Since no issue of insanity was raised by the evidence, it was not error to refuse to submit the issue of insanity to the jury." *Smith v. State*, 180 Ga. App. 278, 279 (1) (349 SE2d 26) (1986); see also *Morgan*, 224 Ga. at 605-606.

McBride argues that his acts themselves were so senseless that they constituted sufficient evidence of his insanity to warrant a jury charge on not guilty by reason of insanity. The cases cited for that proposition, however, involved acts of a nature very different from McBride's. *Brown v. State*, 228 Ga. 215, 219 (184 SE2d 655) (1971) (after stalking her for several hours, defendant shot her husband's mistress at a department store in front of 50 to 75 eyewitnesses); *Wilson v. State*, 9 Ga. App. 274 (70 SE 1128) (1911) (defendant crawled over sleeping husband and attempted to rape wife lying beside him).

Because McBride failed to present any evidence from which a jury could conclude that he did not know right from wrong when he committed the criminal acts, the trial court did not err in declining to charge the jury that he could be found not guilty by reason of insanity.

2. McBride contends that the trial court erred in denying his motion for mistrial, which we review for abuse of discretion. *Perkinson v. State*, 279 Ga. 232, 239 (12) (610 SE2d 533) (2005). He argues that he was entitled to a mistrial because he would not cooperate with his lawyers or with the court-appointed psychiatric evaluator, and that the trial court's failure to grant a mistrial was essentially a sanction for his refusal to cooperate with the evaluator.

After McBride's lawyer moved for a mistrial, the trial court acknowledged that the defense was handicapped by McBride's failure to cooperate with the evaluation and his refusal to talk to his lawyers for several weeks, after being declared mentally competent. The court then addressed McBride directly, and after a lengthy colloquy, McBride assured the court that he would do his best to sit "and quietly listen and speak when [he was] given the opportunity," rather than disrupt the proceedings. When court convened the next morning, counsel reported that McBride still refused to talk to him and renewed the motion for a mistrial based on McBride's "obvious history and his current behavior." In denying the motion, the court observed that if McBride's failure to cooperate were a ground for mistrial, he could avoid ever being tried because he could always refuse to cooperate.

An "appellant cannot obtain a reversal for errors which he himself has committed or induced." *Potts v. State*, 241 Ga. 67, 80 (12) (243 SE2d 510) (1978). While this court also acknowledges the difficulties inherent in representing an uncooperative client who has been found competent, we cannot say the trial court abused its discretion in denying McBride's motion for a mistrial under these circumstances.

*Judgment affirmed. Adams and Blackwell, JJ., concur.*

DECIDED MARCH 12, 2012.

*Tobe C. Karrh*, for appellant.
*S. Hayward Altman, District Attorney, Anthony A. May, Assistant District Attorney*, for appellee.